**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

NICHOLAS J. DEIULIIS,         )
                                    )
               Plaintiff,     )     Civil No. _____
                                    )
     v.                       )
                                    )
JORDAN ENGEL, Individually and   )     JURY TRIAL DEMANDED
d/b/a The Decolonial Atlas,         )
GOOD WORLDWIDE INC.,         )
LEO SHVEDSKY, and             )
BIG THINK, INC.,                )
                                    )
             Defendants.   )

## COMPLAINT

AND NOW comes Plaintiff Nicholas J. DeIuliis ("Mr. DeIuliis" or "Plaintiff"), by and through his undersigned counsel, and files this civil complaint ("Complaint") with jury trial demand against the above-captioned Defendants, and further pleads and states as follows:

## INTRODUCTION

1.     This is a civil diversity action sounding in defamation and defamation per se.

2.     Mr. DeIuliis was personally and individually—and incorrectly—targeted by name in articles, internet content, and associated map entitled "Names and Locations of the Top 100 People Killing the Planet."

3.     Defendants, in their own words, specifically targeted Mr. DeIuliis by name in order to "call [him] out" as one of 100 "decision makers in positions of power at major corporations" who is "killing the planet."  Mr. DeIuliis was described as being a "CEO[] that can be named and shamed" from a "very specific list of companies."

4.     The problem is that Defendants did so by knowingly and/or recklessly—and falsely—identifying Mr. DeIuliis as the CEO of the coal company that Defendants wished to target as a polluter, even though Mr. DeIuliis is not an officer, director, or employee of that coal company. Defendants associated Mr. DeIuliis with the wrong company.

5.     Mr. DeIuliis was and is the President and Chief Executive Officer of CNX Resources Corporation ("CNX"), a Pittsburgh-based, publicly-traded clean energy natural gas exploration and production company. Defendants, however, falsely and incorrectly identify Mr. DeIuliis as being the CEO of an entirely different company, CONSOL Energy, Inc. ("CONSOL"), which is a Pittsburgh-based, publicly-traded coal company for which Mr. DeIuliis is not an officer, director, or employee.

6.     Because both CNX and CONSOL are publicly-traded—and thus make their ownership and leadership information readily and easily accessible to the public, including via public corporate filings—it is inconceivable that Defendants could tie Mr. DeIuliis to the wrong company, absent intentional, reckless, or extremely negligent conduct.

7.     Defendants have defamed Mr. DeIuliis by falsely labeling him as the planet "kill[er]" CEO of a coal company, CONSOL. This is incorrect and erroneous.

8.     Defendants' defamation of Mr. DeIuliis is particularly damaging to Mr. DeIuliis and to his professional reputation because he has worked hard and invested years of time and effort into promoting himself and his company, CNX, to investors, potential investors, and to the public at large as leaders in the field of clean energy natural gas exploration and production. This has included substantial effort devoted to distinguishing and separating himself, CNX, and the natural gas industry from the stigmas associated with coal companies like the one that Defendants have

falsely linked to Mr. DeIuliis, as such coal companies are publicly perceived as having large and environmentally-unfriendly carbon footprints.

## THE PARTIES

9.      Plaintiff Nicholas J. DeIuliis ("Mr. DeIuliis" or "Plaintiff") is an adult individual who resides in Allegheny County, Pennsylvania.  Mr. DeIuliis is a Pennsylvania citizen.

10.     Defendant Jordan Engel ("Engel") is, upon information and belief, an adult individual who resides in the State of New York and who regularly conducts business in the State of New York, including doing business as "The Decolonial Atlas."  Defendant Engel is, upon information and belief, a New York citizen.

11.     Defendant Good Worldwide Inc. ("GOOD") is, upon information and belief, a Delaware corporation with a principal place of business in California and with offices located in Manhattan, New York, New York.

12.     Defendant Leo Shvedsky ("Shvedsky") is, upon information and belief, an adult individual who resides in California and regularly conducts business in the State of New York as a writer for GOOD.  Defendant Shvedsky is, upon information and belief, a California citizen.

13.     Defendant Big Think, Inc. ("Big Think") is, upon information and belief, a New York corporation with a principal place of business in the State of New York and offices located in Manhattan, New York, New York.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as complete diversity exists and the matter in controversy exceeds $75,000, exclusive of interest and costs.

15.    The Court has personal jurisdiction over all Defendants[1] in this action, as all Defendants have systematic and continuous contacts within the State of New York such that exercise of general jurisdiction is proper; and, additionally or in the alternative, all Defendants have contacts within New York with respect to the defamatory articles and materials at-issue, such that exercise of specific jurisdiction is proper in this case.

16.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Mr. DeIuliis's Role as a Leader in the Industry of Clean Natural Gas

17.    Mr. DeIuliis is a businessman in Pittsburgh, Pennsylvania, with years of experience as a leader in the energy industry, which is an industry of longstanding importance to that region's economy.

18.    From February 2011 through the present, Mr. DeIuliis was and is President of CNX Resources Corporation ("CNX"), formerly named CONSOL Energy Inc.; and, from May 2014 through the present, Mr. DeIuliis additionally was and is Chief Executive Officer ("CEO") of CNX, formerly named CONSOL Energy Inc.

19.    CNX is a publicly-traded corporation and is traded on the New York Stock Exchange under the stock ticker "CNX."

20.    Prior to November 28, 2017, CNX, although identified at all times by stock ticker "CNX," was named "CONSOL Energy Inc." (hereinafter, "Old CONSOL").

---

[1]   The term "Defendants," as used herein, collectively refers to all named defendants:  Engel, GOOD, Shvedsky, and Big Think.

21.     Prior to November 28, 2017, CNX owned and operated both natural gas assets and coal assets.

22.     On November 28, 2017, a historic and much-publicized transaction occurred (the "2017 Transaction") pursuant to which CNX decided to divest itself of its coal assets and to cease more than 150 years of prior involvement in the traditional coal industry.

23.     From November 28, 2017 and forward, CNX would forgo coal operations and Mr. DeIuliis would lead CNX in the field of clean natural gas exploration and production.

24.     In the 2017 Transaction, CNX divested itself of its coal assets and a new coal company was formed, CONSOL Energy Inc. ("CONSOL"), formerly named CONSOL Mining Corporation.  Since then, CONSOL has been and is publicly traded on the New York Stock Exchange under stock ticker "CEIX."

25.     Mr. DeIuliis has never served as an officer, director, or employee of CONSOL.

26.     Information related to the structure and leadership of both CNX and CONSOL, and to the 2017 Transaction, has been and is readily publicly available via public corporate filings and reporting.

27.     Information related to the structure and leadership of both CNX and CONSOL, and to the 2017 Transaction, has been and is readily publicly available via extensive media coverage.

28.     Mr. DeIuliis has developed and fostered a professional reputation for himself and for CNX, the company that he leads, an innovative and environmentally-responsible leader in the field of clean natural gas energy exploration and production.

29.     Since the 2017 Transaction, CNX's dedicated focus has been on the natural gas exploration and production market segment.

30.     CNX's divestiture of its coal assets and other actions taken by CNX is estimated to have achieved a 94 percent cumulative reduction in CNX's carbon footprint from 2011 through 2018, with total Scope 1 and 2 carbon dioxide emissions (measured in thousands of metric tons of $CO_2$) reduced from 15,461.00 in 2011 to a mere 983.19 in 2018

31.     Few other companies and other CEOs—in any industry—have reduced their company's carbon footprints by the extreme 94 percent amount achieved by Mr. DeIuliis and CNX in a comparable period of time.

32.     Mr. DeIuliis's professional reputation as being the CEO of an environmentally-responsible, clean natural gas company—and CNX's reputation as being such a company—is of extreme personal and professional importance to Mr. DeIuliis.

33.     This reputational impact has significant economic importance as well, both to Mr. DeIuliis's own investments and to CNX.   There is a growing trend among many investors, including major universities and large managed funds, to avoid, divest, or limit investment in coal companies or in companies perceived as having a large carbon footprint or as otherwise being environmentally unfriendly.   Relatedly, nature gas is often seen by such investors as clean or preferable alternative investment.

34.     For example, as reported by CNBC in a January 14, 2020 article, BlackRock Chief Executive Larry Fink has stated:  "Climate change has become a defining factor in companies' long-term prospects … But awareness is rapidly changing, and I believe we are on the edge of a fundamental reshaping of finance;" and "Climate change is almost invariably the top issue that clients around the world raise with BlackRock.  From Europe to Australia, South America to China, Florida to Oregon, investors are asking how they should modify their portfolios."

35.     This reputational impact has additional significant economic importance to Mr. DeIuliis because, among other things, he—as CEO of a large company traded on the New York Stock Exchange—is a candidate or potential candidate for service on the boards of directors of other companies, for public speaking engagements, and for other similar sources of compensation that are commonly available to similarly-situated corporate CEOs.  Professional reputation and good citizenship are of paramount importance in order to be considered for such positions and opportunities, and particularly in light of the same growing environmental sensitivities that increasingly affect investment decisions.

36.     As set forth in the paragraphs that follow, Mr. DeIuliis has suffered damage to his reputation and economically by the false, defamatory information disseminated by Defendants.

### Publications of False, Defamatory Information About Mr. DeIuliis: Defendant Engel, Individually and d/b/a The Decolonial Atlas

37.     Upon information and belief, Defendant Engel authors and creates articles and content for dissemination via the internet.

38.     Upon information and belief, Defendant Engel's above-described activities include doing so by doing business as "The Decolonial Atlas" and by creating and maintaining an internet blog by that name.

39.     The Decolonial Atlas operates as a volunteer-run project that prioritizes its information, namely their printed maps, for indigenous schools and cultural centers.

40.     The Decolonial Atlas offers users the opportunity to donate to their efforts with "100% of funds raised [going] toward[s] printing and mailing maps."

41.     The Decolonial Atlas describes itself as a "growing collection of maps" that it saves "help us to challenge our relationships with the land, people, and state."  Further it acknowledges

that the "orientation of a map, its projection, the presence of political borders, which features are included or excluded, and the language used to label a map are all subject to the map-maker's bias—whether deliberate or not."

42.     On April 27, 2019, Defendant Engel published an article  that he authored and an accompanying map that he created entitled "Names and Locations of the Top 100 People Killing the Planet" on his internet blog, The Decolonial Atlas   (https://decolonialatlas.wordpress.com/). A true and correct copy of the article ("Article") is attached to this Complaint as Exhibit 1 and its contents are incorporated to this Complaint in their entirety as if fully repeated and set forth herein.

43.     Defendant Engel identified 100 corporations and CEOs worldwide in his map published online (hereinafter referred to as the "Map").  A true and correct copy of the Map, as downloaded  from  https://decolonialatlas.files.wordpress.com/2019/04/names-and-locations.png on April 17, 2020, is attached to this Complaint as Exhibit 2 and the Map and its contents are incorporated to this Complaint in their entirety as if fully repeated and set forth herein.

44.     Upon information and belief, the Map, as it appears in Exhibit 2, is identical to the Map as it was first published online on April 27, 2019.

45.     The Map includes the Plaintiff in this case, "Nicholas DeIuliis."

46.     The Map states and represents that Mr. DeIuliis is affiliated with "Consol Energy" in "Pittsburgh."

47.     The Map contains false and misleading information that defames Mr. DeIuliis.

48.     In addition to the defamatory Map, Defendant Engel makes disparaging statements including "the earth is not dying, it is being killed and those who are killing it have names and address;" "Not just their companies, but *them*. Now it's personal;" "Whether or not we separate

our recycling, these corporations will go on trashing the planet unless we stop them.  The key decision-makers at these companies have the privilege of relative anonymity, and with this map, we're trying to pull back that veil and call them out.  These guys should feel the same personal responsibility for saving the planet that we all feel."

49.     Defendant Engel's widespread publication and dissemination of his defamatory statements has generated at least 187 comments on The Decolonial Atlas web page alone, with commentators calling for action against the named CEOs, inclusive of Mr. DeIuliis; and has generated many additional similar comments elsewhere.

50.     Defendant Engel's widespread publication and dissemination of his defamatory statements has incited commentators to call for actions against Mr. DeIuliis and the named executives and to encourage harassing Mr. DeIuliis and the CEOs.

51.     For example, one commenter identified as "Toni Massari" reacted to Defendant Engel's statements in a January 3, 2020 posted comment stating that "we, collectively have the power to start undermining these people, by moving our money away from them, punishing the banks who finance their enterprises, and building our own, alternative markets."

52.     Another commenter identified as "Lisa Yee-Litzenberg," on September 26, 2019, posted that "this is great but would be even better to have the email address of these CEOs so people can write to them and make a specific ask," which further encourages bloggers and readers to unfairly harass Mr. DeIuliis.

53.     Defendant Engel's widespread publication and dissemination of his defamatory statements have incited commentators to make threats against Mr. DeIuliis.

54.     For example, a comment posted by a user identified as "jamjamdave" on April 29, 2019 stated, "threatening the executives with prosecution won't work….If we want to change their behavior we must promise that we will imprison their grandchildren in 2040 unless they act today to prevent catastrophe"; and "[CEOs] think their wealth can insulate their grandchildren from the worst effects.  We need to threaten them with prison to make them re-think their priorities."

55.     The defamatory and false Map published by Defendant Engel on The Decolonial Atlas, including the statements referenced above, is accessible to a worldwide audience.

56.     Upon searching Defendant Engel's titled "Names and Locations of the Top 100 People Killing the Planet" on Google search engine, it yielded "about 153,000,000 results" as of April 17, 2020.

57.     Defendant Engel additionally published and further disseminated the same Map and article on the social media website Twitter under the handle "@decolonialatlas" on April 28, 2019. The Twitter post was retweeted and redistributed 64 times by online users.

58.     Defendant Engel additionally published and further disseminated the same Map and article on the social media website Facebook under the account name "The Decolonial Atlas" on April 28, 2019.  The Facebook post was shared 1,200 times by online users.

59.     Defendant Engel additionally published and further disseminated the same Map and article on the social media website Instagram under the handle "@decolonialatlas" on April 28, 2019.

60.     Defendant Engel additionally published and further disseminated the same Map by producing and distributing printed copies of the Map and by advertising and making the same available for order.

61.     Upon information and belief, Defendant Engel has profited financially from defaming and publishing false information regarding Mr. DeIuliis.

62.     Defendant Engel has and does publish and print the Map knowingly and intentionally with the false, misleading, and defamatory reference of Mr. DeIullis as CEO of CONSOL, which impairs his professional reputation and economic viability as an executive leader of a natural gas corporation, CNX.

63.     Defendant Engel authored, co-authored, and/or published a second edition or revised edition of the article, dated September 2019.

64.     The new article update correctly names the CEO for "Console Energy" [sic] as "James A. Brock," but fails to make any other revisions and does not revise the Map.

65.     The Map remains unchanged on The Decolonial Atlas web site and social media pages.

66.     By maintaining the Map with Mr. DeIuliis named as the CEO of CONSOL, The Decolonial Atlas continues to state that Mr. DeIuliis is a person responsible for "killing the planet."

67.     The Decolonial Atlas, despite having actual knowledge of the true and correct CEO of CONSOL, has not taken any action to correct, revise, or remove Mr. DeIuliis's affiliation with CONSOL.

68.     The Map remains in its original form as of April 17, 2020 by incorrectly listing Mr. DeIuliis as CEO of CONSOL.

69.     This incorrect Map is also available for continued distribution online and in print upon request, which will continue to harm Mr. DeIuliis's personal and professional reputation.

70.    Defendant Engel's a failure to correct, revise, or remove the Map is particularly egregious and outrageous because Defendant Engel has admitted actual knowledge of the falsehood.

71.    Defendant Engel's failure to correct the Map despite his actual knowledge of its falsehood is an intentional and malicious act to harm Mr. DeIuliis.

**Publications of False, Defamatory Information About Mr. DeIuliis:**
**Defendants GOOD and Shvedsky**

72.    Defendant GOOD is a media company with a presence on the internet.  It states that it is a "social impact company with a mass audience" that reaches "100 million energized, engaged, and influential" individuals.

73.    Defendant GOOD has influential "World-Leading Partners" in Google, the Bill and Melinda Gates Foundation, the United Nations Foundation, Starbucks, and Lululemon.

74.    Defendant GOOD "works[s] with brands and communities to create participatory campaigns and shareable stories that drive powerful results across business and society."

75.    Defendant GOOD is an independent and separate entity from The Decolonial Atlas.

76.    On April 30, 2019, an article entitled "These are the names and locations of the Top 100 people who are killing the planet" was published on the internet at https://www.good.is/articles/top-100-people-killing-planet, and which site is owned and operated by Defendant GOOD.  A true and correct copy of the article is attached to this Complaint as Exhibit 3 and its contents are incorporated to this Complaint in their entirety as if fully repeated and set forth herein.

77.     Despite inclusion of the same defamatory Map, the article published by Defendant GOOD was a new and separate publication than the prior article written by Defendant Engel.

78.     The article was authored and/or published by Defendant GOOD and/or Defendant Shvedsky, who, upon information and belief, is an employee or agent of GOOD.

79.     Defendants GOOD and Shvedsky state in the article that, "After all, even if we're making responsible decisions on the local level, we're ultimately still going to be left with a broken planet if the decision makers in positions of power at major corporations and government continue to freely pollute and cause irreparable harm to our wildlife and ecosystems."

80.     Defendants GOOD and Shvedsky urge their audience to "stop blaming [their] neighbors" and that "real accountability starts up top."

81.     Defendants GOOD and Defendant Shvedsky publish, reference, adopt, and incorporate into their own article the Map that incorrectly affiliates Mr. DeIuliis with CONSOL.

82.     Defendants GOOD and Shvedsky increased the expansive audience where the Map and article was accessible by republishing the Map and associated article on the social media website Twitter under the handle "@good" on April 30, 2019.

83.     Defendants GOOD and Shvedsky further increased the expansive audience where the Map and article was accessible by republishing the Map and associated article on the social media website Facebook using the account name "GOODHQ" on April 30, 2019.

84.     As GOOD has a large audience that reaches millions of consumers, by publishing the Map which contains false information, Defendants GOOD and Shvedsky have and will continue to cause harm to Mr. DeIuliis.

**Publications of False, Defamatory Information About Mr. DeIuliis:**
**Defendant Big Think, Inc.**

85.     Defendant Big Think is a multimedia corporation described as achieving "actionable lessons from the world's greatest thinkers and doers make the Big Think audience smarter, faster."

86.     Defendant Big Think reaches millions of users, including 'thousands of experts inside the Big Think network."

87.     Defendant Big Think provides consumers with the option to subscribe for newsletters, videos, and podcasts through their premium service.

88.     Defendant Big Think is a separate entity that operates independently from Decolonial Atlas and Defendant Engel.

89.     On May 6, 2019, an article titled, "Are these 100 people killing the planet?" was published on the internet at https://bigthink.com/strange-maps/climate-change?rebelltitem=1#rebelltitem1, which web site is owned and operated by Defendant Big Think.  A true and correct copy of the article is attached to this Complaint as Exhibit 4 and its contents are incorporated to this Complaint in their entirety as if fully repeated and set forth herein.

90.     Defendant Big Think's stated purpose for publishing the article is that: "The harm that's being done to the planet can be pinpointed, to a very specific list of companies.  And those companies have CEOs that can be named and shamed."

91.     Defendant Big Think publishes the Map that incorrectly identifies Mr. DeIuliis as the CEO of CONSOL.

92.     Defendant Big Think increased the expansive audience where the Map and article was accessible by republishing the same Map and article on the social media website Twitter numerous times under the handle "@Big Think" with the most recent being November 27, 2019.

93.     Defendant Big Think further increased the expansive audience where the Map and article was accessible by republishing the same Map and article on the social media website Facebook numerous times under the account name "Big Think" with the most recent being on April 12, 2020.

94.     Defendant Big Think continued to publish and republish the Map well after it was acknowledged on The Decolonial Atlas' web page that the map incorrectly identified Mr. DeIuliis as the CEO of CONSOL.

95.     Defendant Big Think intentionally and knowingly continues to disperse false information and fails to correct, revise, or remove the erroneous map from publication.

96.     As Defendant Big Think has a large audience that reaches millions of consumers, by publishing the Map which contains false information, Big Think has and will continue to cause harm to Mr. DeIuliis.

## COUNT I:  DEFAMATION *PER SE*
**(Defendant Engel, Individually and d/b/a The Decolonial Atlas)**

97.     Plaintiff incorporates each and every of the foregoing paragraphs as if fully repeated and set forth herein.

98.     In the Map and accompanying online Article first published and made available online on April 27, 2019 and continuously available through the present, Defendant Engel defamed Mr. DeIuliis.

- 15 -

99.     Defendant Engel did so as an individual author and/or creator and/or maintainer of the Map, Article, and associated The Decolonial Atlas web site.

100.    Defendant Engel did so by making the false statement that "Nicholas DeIuliis" is the CEO or leader of "Consol Energy" in "Pittsburgh."

101.    The foregoing statement and representation is false.

102.    Defendant Engel did so by making the related false statement that "Nicholas DeIuliis" is one of the "Top 100 People Killing the Planet," which was premised upon falsely identifying him as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

103.    The foregoing statement and representation is false.

104.    Defendant Engel made these false statements and representations without privilege or authorization.

105.    Defendant Engel used these false statements as a basis and reason for then making additional disparaging statements about Mr. DeIuliis, including as identified herein above.

106.    Defendant Engel made these false statements and representations and disparaging statements in an intentional effort to shame Mr. DeIuliis and damage his personal and professional reputation.

107.    Defendant Engel's false statements and representations were and are easily shown to be false because both CONSOL and CNX are publicly-traded corporations whose leadership structure is readily available in public filings and elsewhere.

108.    As such, Defendant Engel either knew but intentionally and maliciously disregarded the truth, or should have known but recklessly disregarded the truth, with respect to

the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

109.    At a minimum, Defendant Engel negligently disregarded the truth with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

110.    Mr. DeIuliis is neither a public figure nor a limited-purpose public figure because, with respect to the subject matter of the Map and the Article, he has chosen to not thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved.  Rather, until reacting and defending himself via the filing of this complaint and/or until recently, Mr. DeIuliis has historically avoided engaging with critics like Defendant Engel.

111.    In the alternative, even if Mr. DeIuliis is deemed to be a limited-purpose public figure, the false statements and representations and disparaging statements were made with actual malice because, as set forth above, because Defendant Engel knowingly or recklessly disregarded the extensive publicly-filed and available documents as to CONSOL and CNX with the stated intent of targeting Mr. DeIuliis personally and individually for purposes of shaming him and causing him personal and reputational harm.

112.    These false statements and representations and disparaging statements were and are widely disseminated to a global audience as a result, as demonstrated by the search hits, reader comments, and social media notes included herein above.

113.    These false statements and representations and disparaging statements were and are also widely disseminated to a global audience through the printing and dissemination of printed paper Maps by Defendant Engel.

114.    These false statements and representations and disparaging statements constitute defamation *per se* because they are of a nature that injures—and have injured—Mr. DeIuliis in his trade, business, or profession.

115.    Among other things, these false statements and representations and disparaging statements constitute defamation *per se* because it is professionally damaging to Mr. DeIuliis to be branded as being an extreme polluter, and as leading a company that is likewise branded as an extreme polluter, when he has and is actively working to promote himself as a responsible corporate leader and to promote himself and the company that he leads, CNX, as a clean natural gas industry participant with an extremely-reduced carbon footprint.

116.    Mr. DeIuliis has, in fact, suffered reputational damages, both personally and professionally, as a result of Defendant Engel's defamation.

117.    While special damages are not required in an action for defamation *per se*, these false statements and representations and disparaging statements have additionally caused Mr. DeIuliis special damages in the form of the loss of income and/or potential income and/or things having economic or pecuniary value.

118.    Among other things, these false statements and representations and disparaging statements have caused Mr. DeIuliis special damages because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be environmentally unfriendly and/or a coal industry participant—has or may have:  (i) driven down the stock price of Mr. DeIuliis's company, CNX, including shares owned by Mr. DeIuliis; (ii) caused investors or potential investors to avoid, divest from, or limit investment in Mr. DeIuliis's company, CNX; and (iii) caused Mr. DeIuliis to be passed over or not considered for

corporate board positions, speaking engagements, and/or other opportunities for additional income typically available to the CEO of a publicly-traded corporation.

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Engel on Count I and accordingly award relief as set forth in Plaintiff's PRAYER FOR RELIEF below.

## COUNT II:  DEFAMATION
### (Defendant Engel, Individually and d/b/a The Decolonial Atlas)

119.    Plaintiff incorporates each and every of the foregoing paragraphs as if fully repeated and set forth herein.

120.    In the alternative to the defamation *per se* pled in Count I, or in addition to it, Defendant Engel has committed defamation, inclusive of the requisite special damages.

121.    In the Map and accompanying online Article first published and made available online on April 27, 2019 and continuously available through the present, Defendant Engel defamed Mr. DeIuliis.

122.    Defendant Engel did so as an individual author and/or creator and/or maintainer of the Map, Article, and associated The Decolonial Atlas web site.

123.    Defendant Engel did so by making the false statement that "Nicholas DeIuliis" is the CEO or leader of "Consol Energy" in "Pittsburgh."

124.    The foregoing statement and representation is false.

125.    Defendant Engel did so by making the related false statement that "Nicholas DeIuliis" is one of the "Top 100 People Killing the Planet," which was premised upon falsely

identifying him as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

126.    The foregoing statement and representation is false.

127.    Defendant Engel made these false statements and representations without privilege or authorization.

128.    Defendant Engel used these false statements as a basis and reason for then making additional disparaging statements about Mr. DeIuliis, including as identified herein above.

129.    Defendant Engel made these false statements and representations and disparaging statements in an intentional effort to shame Mr. DeIuliis and damage his personal and professional reputation.

130.    Defendant Engel's false statements and representations were and are easily shown to be false because both CONSOL and CNX are publicly-traded corporations whose leadership structure is readily available in public filings and elsewhere.

131.    As such, Defendant Engel either knew but intentionally and maliciously disregarded the truth, or should have known but recklessly disregarded the truth, with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

132.    At a minimum, Defendant Engel negligently disregarded the truth with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

133.    Mr. DeIuliis is neither a public figure nor a limited-purpose public figure because, with respect to the subject matter of the Map and the Article, he has chosen to not thrust himself

to the forefront of particular public controversies in order to influence the resolution of the issues involved.  Rather, until reacting and defending himself via the filing of this complaint and/or until recently, Mr. DeIuliis has historically avoided engaging with critics like Defendant Engel.

134.    In the alternative, even if Mr. DeIuliis is deemed to be a limited-purpose public figure, the false statements and representations and disparaging statements were made with actual malice because, as set forth above, because Defendant Engel knowingly or recklessly disregarded the extensive publicly-filed and available documents as to CONSOL and CNX with the stated intent of targeting Mr. DeIuliis personally and individually for purposes of shaming him and causing him personal and reputational harm.

135.    These false statements and representations and disparaging statements were and are widely disseminated to a global audience as a result, as demonstrated by the search hits, reader comments, and social media notes included herein above.

136.    These false statements and representations and disparaging statements were and are also widely disseminated to a global audience through the printing and dissemination of printed paper Maps by Defendant Engel.

137.    These false statements have injured Mr. DeIuliis in his trade, business, or profession.

138.    Among other things, these false statements and representations and disparaging statements are professionally damaging to Mr. DeIuliis because he is branded as being an extreme polluter, and as leading a company that is likewise branded as an extreme polluter, when he has and is actively working to promote himself as a responsible corporate leader and to promote

himself and the company that he leads, CNX, as a clean natural gas industry participant with an extremely-reduced carbon footprint.

139.    Mr. DeIuliis has, in fact, suffered reputational damages, both personally and professionally, as a result of Defendant Engel's defamation.

140.    These false statements and representations and disparaging statements have additionally caused Mr. DeIuliis special damages in the form of the loss of income and/or potential income and/or things having economic or pecuniary value.

141.    Among other things, these false statements and representations and disparaging statements have caused Mr. DeIuliis special damages because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be environmentally unfriendly and/or a coal industry participant—has or may have:  (i) driven down the stock price of Mr. DeIuliis's company, CNX, including shares owned by Mr. DeIuliis; (ii) caused investors or potential investors to avoid, divest from, or limit investment in Mr. DeIuliis's company, CNX; and (iii) caused Mr. DeIuliis to be passed over or not considered for corporate board positions, speaking engagements, and/or other opportunities for additional income typically available to the CEO of a publicly-traded corporation.

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Engel on Count II and accordingly award relief as set forth in Plaintiff's PRAYER FOR RELIEF below.

## COUNT III:  DEFAMATION *PER SE*
### (Defendant Engel, Individually and d/b/a The Decolonial Atlas)

142.    Plaintiff incorporates each and every of the foregoing paragraphs as if fully repeated and set forth herein.

143.    Plaintiff specifically incorporates each and every paragraph of "COUNT I" and "COUNT II," above, as if fully repeated and set forth herein; and Plaintiff alleges that this "COUNT III" for an additional instance of defamation is premised upon the same allegations, as added to by the following.

144.    In September 2019, Defendant Engel, individually and doing business and The Decolonial Atlas, published what amounts to a second edition or revised edition of the Map and Article.

145.    In doing so, Defendant Engel engaged in a second instance of defamation.

146.    Notably, this September 2019 publication of the revised Map and Article made buried corrections at the bottom of the Article with respect to the corporate leaders of certain companies and, in doing so, correctly names the CEO for "Console Energy" [sic] as "James A. Brock."

147.    Despite this update, the Map remains unchanged and continues to incorrectly identify Mr. DeIuliis as the CEO or leader of CONSOL.

148.    Defendant Engel's failure to correct, revise, or remove the Map—leaving Mr. DeIuliis's name on it and continuing to offer the Map for internet, social media, and printed distribution in this form—is particularly egregious because, here, Defendant Engel undisputedly and admittedly had actual knowledge of the falsehood.

149.    Defendant Engel's failure to correct the Map despite actual knowledge of its falsehood is an intentional and malicious act to personally target and harm Mr. DeIuliis.

150.    As demonstrated by continued internet search hits and reader comments post-dating September 2019, the widespread distribution of Defendant Engel's false statements and misrepresentations and disparaging statements continued and continues to the present.

151.    These false statements and representations and disparaging statements were and are widely disseminated to a global audience as a result, as demonstrated by the search hits, reader comments, and social media notes included herein above.

152.    These false statements and representations and disparaging statements were and are also widely disseminated to a global audience through the printing and dissemination of printed paper Maps by Defendant Engel.

153.    These false statements and representations and disparaging statements constitute defamation *per se* because they are of a nature that injures Mr. DeIuliis in his trade, business, or profession.

154.    Among other things, these false statements and representations and disparaging statements constitute defamation *per se* because it is professionally damaging to Mr. DeIuliis to be branded as being an extreme polluter, and as leading a company that is likewise branded as an extreme polluter, when he has and is actively working to promote himself as a responsible corporate leader and to promote himself and the company that he leads, CNX, as a clean natural gas industry participant with an extremely-reduced carbon footprint.

155.    Mr. DeIuliis has, in fact, suffered reputational damages, both personally and professionally, as a result of Defendant Engel's defamation.

156.    While special damages are not required in an action for defamation *per se*, these false statements and representations and disparaging statements have additionally caused Mr.

DeIuliis special damages in the form of the loss of income and/or potential income and/or things having economic or pecuniary value.

157.    Among other things, these false statements and representations and disparaging statements have caused Mr. DeIuliis special damages because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be environmentally unfriendly and/or a coal industry participant—has or may have:  (i) driven down the stock price of Mr. DeIuliis's company, CNX, including shares owned by Mr. DeIuliis; (ii) caused investors or potential investors to avoid, divest from, or limit investment in Mr. DeIuliis's company, CNX; and (iii) caused Mr. DeIuliis to be passed over or not considered for corporate board positions, speaking engagements, and/or other opportunities for additional income typically available to the CEO of a publicly-traded corporation.

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Engel on Count III and accordingly award relief as set forth in Plaintiff's PRAYER FOR RELIEF below.

## <u>COUNT IV:  DEFAMATION</u>
**(Defendant Engel, Individually and d/b/a The Decolonial Atlas)**

158.    Plaintiff incorporates each and every of the foregoing paragraphs as if fully repeated and set forth herein.

159.    Plaintiff specifically incorporates each and every paragraph of "COUNT I" and "COUNT II" above, as if fully repeated and set forth herein; and Plaintiff alleges that this "COUNT IV" for an additional instance of defamation is premised upon the same allegations, as added to by the following.

160.    In the alternative to the defamation *per se* pled in Count III, or in addition to it, Defendant Engel has committed defamation, inclusive of the requisite special damages.

161.    In September 2019, Defendant Engel, individually and doing business and The Decolonial Atlas, published what amounts to a second edition or revised edition of the Map and Article.

162.    In doing so, Defendant Engel engaged in a second instance of defamation.

163.    Notably, this September 2019 publication of the revised Map and Article made buried corrections at the bottom of the Article with respect to the corporate leaders of certain companies and, in doing so, correctly names the CEO for "Console Energy" [sic] as "James A. Brock."

164.    Despite this update, the Map remains unchanged and continues to incorrectly identify Mr. DeIuliis as the CEO or leader of CONSOL.

165.    Defendant Engel's failure to correct, revise, or remove the Map—leaving Mr. DeIuliis's name on it and continuing to offer the Map for internet, social media, and printed distribution in this form—is particularly egregious because, here, Defendant Engel undisputedly and admittedly had actual knowledge of the falsehood.

166.    Defendant Engel's failure to correct the Map despite actual knowledge of its falsehood is an intentional and malicious act to personally target and harm Mr. DeIuliis.

167.    As demonstrated by continued internet search hits and reader comments post-dating September 2019, the widespread distribution of Defendant Engel's false statements and misrepresentations and disparaging statements continued and continues to the present.

168.    These false statements and representations and disparaging statements were and are widely disseminated to a global audience as a result, as demonstrated by the search hits, reader comments, and social media notes included herein above.

169.    These false statements and representations and disparaging statements were and are also widely disseminated to a global audience through the printing and dissemination of printed paper Maps by Defendant Engel.

170.    These false statements and representations and disparaging statements have injured Mr. DeIuliis in his trade, business, or profession.

171.    Among other things, these false statements and representations and disparaging statements are professionally damaging to Mr. DeIuliis because he is branded as being an extreme polluter, and as leading a company that is likewise branded as an extreme polluter, when he has and is actively working to promote himself as a responsible corporate leader and to promote himself and the company that he leads, CNX, as a clean natural gas industry participant with an extremely-reduced carbon footprint.

172.    Mr. DeIuliis has, in fact, suffered reputational damages, both personally and professionally, as a result of Defendant Engel's defamation.

173.    These false statements and representations and disparaging statements have additionally caused Mr. DeIuliis special damages in the form of the loss of income and/or potential income and/or things having economic or pecuniary value.

174.    Among other things, these false statements and representations and disparaging statements have caused Mr. DeIuliis special damages because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be

environmentally unfriendly and/or a coal industry participant—has or may have: (i) driven down the stock price of Mr. DeIuliis's company, CNX, including shares owned by Mr. DeIuliis; (ii) caused investors or potential investors to avoid, divest from, or limit investment in Mr. DeIuliis's company, CNX; and (iii) caused Mr. DeIuliis to be passed over or not considered for corporate board positions, speaking engagements, and/or other opportunities for additional income typically available to the CEO of a publicly-traded corporation.

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Engel on Count IV and accordingly award relief as set forth in Plaintiff's PRAYER FOR RELIEF below.

## COUNT V:  DEFAMATION *PER SE*
### (Defendants GOOD and Shvedsky)

175.   Plaintiff incorporates each and every of the foregoing paragraphs as if fully repeated and set forth herein.

176.   On April 30, 2019, Defendants GOOD and Shvedsky authored and/or published a new article entitled "These are the names and locations of the Top 100 people who are killing the planet" on the website https://www.good.is/articles/top-100-people-killing-planet, which is owned and operated by GOOD.

177.   Defendants GOOD and Shvedsky include, adopt, and republish the defamatory Map with new and additional commentary in a new and separate publication from the prior Article written and published by Defendant Engel.  This publication was made online on April 30, 2019 and has been continuously available through the present.

178.   Defendants GOOD and Shvedsky defamed Mr. DeIuliis by making the false statement that "Nicholas DeIuliis" is the CEO or leader of "Consol Energy" in "Pittsburgh."

179.   The foregoing statement and representation is false.

180.   Defendants GOOD and Shvedsky defamed Mr. DeIuliis by making the related false statement that "Nicholas DeIuliis" is one of the "Top 100 People Killing the Planet," which was premised upon falsely identifying him as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

181.   The foregoing statement and representation is false.

182.   Defendants GOOD and Shvedsky defamed Mr. DeIuliis by making the related false statement that "Nicholas DeIuliis" is a person who "freely pollute[s] and cause[s] irreparable harm to our wildlife and ecosystems," which was premised upon falsely identifying him as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

183.   The foregoing statement and representation is false.

184.   Defendants GOOD and Shvedsky made these false statements and representations without privilege or authorization.

185.   Defendants GOOD and Shvedsky used these false statements as a basis and reason for then making additional disparaging statements about Mr. DeIuliis, including as identified herein above.

186.   Defendants GOOD and Shvedsky made these false statements and representations and disparaging statements in an intentional effort to shame Mr. DeIuliis and damage his personal and professional reputation.

187.   Defendants GOOD and Shvedsky's false statements and representations were and are easily shown to be false because both CONSOL and CNX are publicly-traded corporations whose leadership structure is readily available in public filings and elsewhere.

188.    As such, Defendants GOOD and Shvedsky either knew but intentionally and maliciously disregarded the truth, or should have known but recklessly disregarded the truth, with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

189.    At a minimum, Defendants GOOD and Shvedsky negligently disregarded the truth with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

190.    Mr. DeIuliis is neither a public figure nor a limited-purpose public figure because, with respect to the subject matter of the Map and the Article, he has chosen to not thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved.  Rather, until reacting and defending himself via the filing of this complaint and/or until recently, Mr. DeIuliis has historically avoided engaging with critics like Defendants GOOD and Shvedsky.

191.    In the alternative, even if Mr. DeIuliis is deemed to be a limited-purpose public figure, the false statements and representations and disparaging statements were made with actual malice because, as set forth above, because Defendants GOOD and Shvedsky knowingly or recklessly disregarded the extensive publicly-filed and available documents as to CONSOL and CNX with the stated intent of targeting Mr. DeIuliis personally and individually for purposes of shaming him and causing him personal and reputational harm.

192.    These false statements and representations, and disparaging statements were and are widely disseminated to a global audience as a result, as demonstrated by the search hits, reader comments, and social media notes included herein above.

193.    These false statements and representations and disparaging statements constitute defamation *per se* because they are of a nature that injures—and have injured—Mr. DeIuliis in his trade, business, or profession.

194.    Among other things, these false statements and representations and disparaging statements constitute defamation *per se* because it is professionally damaging to Mr. DeIuliis to be branded as being an extreme polluter, and as leading a company that is likewise branded as an extreme polluter, when he has and is actively working to promote himself as a responsible corporate leader and to promote himself and the company that he leads, CNX, as a clean natural gas industry participant with an extremely-reduced carbon footprint.

195.    Mr. DeIuliis has, in fact, suffered reputational damages, both personally and professionally, as a result of Defendants GOOD and Shvedsky's defamation.

196.    While special damages are not required in an action for defamation *per se*, these false statements and representations and disparaging statements have additionally caused Mr. DeIuliis special damages in the form of the loss of income and/or potential income and/or things having economic or pecuniary value.

197.    Among other things, these false statements and representations and disparaging statements have caused Mr. DeIuliis special damages because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be environmentally unfriendly and/or a coal industry participant—has or may have:  (i) driven down the stock price of Mr. DeIuliis's company, CNX, including shares owned by Mr. DeIuliis; (ii) caused investors or potential investors to avoid, divest from, or limit investment in Mr. DeIuliis's company, CNX; and (iii) caused Mr. DeIuliis to be passed over or not considered for

corporate board positions, speaking engagements, and/or other opportunities for additional income typically available to the CEO of a publicly-traded corporation.

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant GOOD and Defendant Shvedsky on Count V and accordingly award relief as set forth in Plaintiff's PRAYER FOR RELIEF below.

## COUNT VI:  DEFAMATION
### (Defendants GOOD and Shvedsky)

198.    Plaintiff incorporates each and every of the foregoing paragraphs as if fully repeated and set forth herein.

199.    In the alternative to the defamation *per se* pled in Count V, or in addition to it, Defendants GOOD and Shvedsky have committed defamation, inclusive of the requisite special damages.

200.    On April 30, 2019, Defendants GOOD and Shvedsky authored and/or published a new article entitled "These are the names and locations of the Top 100 people who are killing the planet" on the website https://www.good.is/articles/top-100-people-killing-planet, which is owned and operated by GOOD.

201.    Defendants GOOD and Shvedsky include, adopt, and republish the defamatory Map with new and additional commentary in a new and separate publication from the prior Article written and published by Defendant Engel.  This publication was made online on April 30, 2019 and has been continuously available through the present.

202.    Defendants GOOD and Shvedsky defamed Mr. DeIuliis by making the false statement that "Nicholas DeIuliis" is the CEO or leader of "Consol Energy" in "Pittsburgh."

203.    The foregoing statement and representation is false.

204.    Defendants GOOD and Shvedsky defamed Mr. DeIuliis by making the related false statement that "Nicholas DeIuliis" is one of the "Top 100 People Killing the Planet," which was premised upon falsely identifying him as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

205.    The foregoing statement and representation is false.

206.    Defendants GOOD and Shvedsky defamed Mr. DeIuliis by making the related false statement that "Nicholas DeIuliis" is a person who "freely pollute[s] and cause[s] irreparable harm to our wildlife and ecosystems," which was premised upon falsely identifying him as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

207.    The foregoing statement and representation is false.

208.    Defendants GOOD and Shvedsky made these false statements and representations without privilege or authorization.

209.    Defendants GOOD and Shvedsky used these false statements as a basis and reason for then making additional disparaging statements about Mr. DeIuliis, including as identified herein above.

210.    Defendants GOOD and Shvedsky made these false statements and representations and disparaging statements in an intentional effort to shame Mr. DeIuliis and damage his personal and professional reputation.

211.    Defendants GOOD and Shvedsky's false statements and representations were and are easily shown to be false because both CONSOL and CNX are publicly-traded corporations whose leadership structure is readily available in public filings and elsewhere.

212.    As such, Defendants GOOD and Shvedsky either knew but intentionally and maliciously disregarded the truth, or should have known but recklessly disregarded the truth, with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

213.    At a minimum, Defendants GOOD and Shvedsky negligently disregarded the truth with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

214.    Mr. DeIuliis is neither a public figure nor a limited-purpose public figure because, with respect to the subject matter of the Map and the Article, he has chosen to not thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved.  Rather, until reacting and defending himself via the filing of this complaint and/or until recently, Mr. DeIuliis has historically avoided engaging with critics like Defendants GOOD and Shvedsky.

215.    In the alternative, even if Mr. DeIuliis is deemed to be a limited-purpose public figure, the false statements and representations and disparaging statements were made with actual malice because, as set forth above, because Defendants GOOD and Shvedsky knowingly or recklessly disregarded the extensive publicly-filed and available documents as to CONSOL and CNX with the stated intent of targeting Mr. DeIuliis personally and individually for purposes of shaming him and causing him personal and reputational harm.

216.    These false statements and representations, and disparaging statements were and are widely disseminated to a global audience as a result, as demonstrated by the search hits, reader comments, and social media notes included herein above.

217.    These false statements and representations and disparaging statements have injured Mr. DeIuliis in his trade, business, or profession.

218.    Among other things, these false statements and representations and disparaging statements are professionally damaging to Mr. DeIuliis because he is branded as being an extreme polluter, and as leading a company that is likewise branded as an extreme polluter, when he has and is actively working to promote himself as a responsible corporate leader and to promote himself and the company that he leads, CNX, as a clean natural gas industry participant with an extremely-reduced carbon footprint.

219.    Mr. DeIuliis has, in fact, suffered reputational damages, both personally and professionally, as a result of Defendants GOOD and Shvedsky's defamation.

220.    These false statements and representations and disparaging statements have additionally caused Mr. DeIuliis special damages in the form of the loss of income and/or potential income and/or things having economic or pecuniary value.

221.    Among other things, these false statements and representations and disparaging statements have caused Mr. DeIuliis special damages because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be environmentally unfriendly and/or a coal industry participant—has or may have:  (i) driven down the stock price of Mr. DeIuliis's company, CNX, including shares owned by Mr. DeIuliis; (ii) caused investors or potential investors to avoid, divest from, or limit investment in Mr. DeIuliis's company, CNX; and (iii) caused Mr. DeIuliis to be passed over or not considered for corporate board positions, speaking engagements, and/or other opportunities for additional income typically available to the CEO of a publicly-traded corporation.

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant GOOD and Defendant Shvedsky on Count VI and accordingly award relief as set forth in Plaintiff's PRAYER FOR RELIEF below.

## COUNT VII:  DEFAMATION *PER SE*
### (Defendant Big Think)

222.    Plaintiff incorporates each and every of the foregoing paragraphs as if fully repeated and set forth herein.

223.    On May 6, 2019, Defendant Big Think authored and/or published a new article entitled "Are these 100 people killing the planet?" on the website "https://bigthink.com/strange-maps/climate-change?rebelltitem=1#rebelltitem1," which is owned and operated by Big Think.

224.    Defendant Big Think includes, adopts, and republishes the defamatory Map with new and additional commentary in a new and separate publication from the prior Article written and published by Defendant Engel.  This publication was made online on May 6, 2019 and has been continuously available through the present.

225.    Defendant Big Think defamed Mr. DeIuliis by making the false statement that "Nicholas DeIuliis" is the CEO or leader of "Consol Energy" in "Pittsburgh."

226.    The foregoing statement and representation is false.

227.    Defendant Big Think defamed Mr. DeIuliis by making the related false statement that "Nicholas DeIuliis" is one of the "Top 100 People Killing the Planet," which was premised upon falsely identifying him as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

228.    The foregoing statement and representation is false.

229.    Defendant Big Think defamed Mr. DeIuliis by making the related false statement that "Nicholas DeIuliis" is a person who should and "can be named and shamed" because "[t]he harm that's being done to the planet can be pinpointed, to a very specific list of companies" that includes a company under the leadership of "Nicholas DeIuliis."   The foregoing was premised upon falsely identifying Mr. DeIuliis as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

230.    The foregoing statements and representations are false.

231.    Defendant Big Think made these false statements and representations without privilege or authorization.

232.    Defendant Big Think used these false statements as a basis and reason for then making additional disparaging statements about Mr. DeIuliis, including as identified herein above.

233.    Defendant Big Think made these false statements and representations and disparaging statements in an intentional effort to shame Mr. DeIuliis and damage his personal and professional reputation.

234.    Defendant Big Think's false statements and representations were and are easily shown to be false because both CONSOL and CNX are publicly-traded corporations whose leadership structure is readily available in public filings and elsewhere.

235.    As such, Defendant Big Think either knew but intentionally and maliciously disregarded the truth, or should have known but recklessly disregarded the truth, with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

236.    At a minimum, Defendant Big Think negligently disregarded the truth with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

237.    Mr. DeIuliis is neither a public figure nor a limited-purpose public figure because, with respect to the subject matter of the Map and the Article, he has chosen to not thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved.  Rather, until reacting and defending himself via the filing of this complaint and/or until recently, Mr. DeIuliis has historically avoided engaging with critics like Defendant Big Think.

238.    In the alternative, even if Mr. DeIuliis is deemed to be a limited-purpose public figure, the false statements and representations and disparaging statements were made with actual malice because, as set forth above, because Defendant Big Think knowingly or recklessly disregarded the extensive publicly-filed and available documents as to CONSOL and CNX with the stated intent of targeting Mr. DeIuliis personally and individually for purposes of shaming him and causing him personal and reputational harm.

239.    These false statements and representations and disparaging statements were and are widely disseminated to a global audience as a result, as demonstrated by the search hits, reader comments, and social media notes included herein above.

240.    These false statements and representations and disparaging statements constitute defamation *per se* because they are of a nature that injures—and have injured—Mr. DeIuliis in his trade, business, or profession.

241.    Among other things, these false statements and representations and disparaging statements constitute defamation *per se* because it is professionally damaging to Mr. DeIuliis to

be branded as being an extreme polluter, and as leading a company that is likewise branded as an extreme polluter, when he has and is actively working to promote himself as a responsible corporate leader and to promote himself and the company that he leads, CNX, as a clean natural gas industry participant with an extremely-reduced carbon footprint.

242.    Mr. DeIuliis has, in fact, suffered reputational damages, both personally and professionally, as a result of Defendant Big Think's defamation.

243.    While special damages are not required in an action for defamation *per se*, these false statements and representations and disparaging statements have additionally caused Mr. DeIuliis special damages in the form of the loss of income and/or potential income and/or things having economic or pecuniary value.

244.    Among other things, these false statements and representations and disparaging statements have caused Mr. DeIuliis special damages because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be environmentally unfriendly and/or a coal industry participant—has or may have:  (i) driven down the stock price of Mr. DeIuliis's company, CNX, including shares owned by Mr. DeIuliis; (ii) caused investors or potential investors to avoid, divest from, or limit investment in Mr. DeIuliis's company, CNX; and (iii) caused Mr. DeIuliis to be passed over or not considered for corporate board positions, speaking engagements, and/or other opportunities for additional income typically available to the CEO of a publicly-traded corporation.

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Big Think, Inc. on Count VII and accordingly award relief as set forth in Plaintiff's PRAYER FOR RELIEF below.

## COUNT VIII:  DEFAMATION
**(Defendant Big Think)**

245.    Plaintiff incorporates each and every of the foregoing paragraphs as if fully repeated and set forth herein.

246.    In the alternative to the <u>defamation *per se*</u> pled in Count VII, or in addition to it, Defendant Big Think has committed <u>defamation</u>, inclusive of the requisite special damages.

247.    On May 6, 2019, Defendant Big Think authored and/or published a new article entitled "Are these 100 people killing the planet?" on the website "https://bigthink.com/strange-maps/climate-change?rebelltitem=1#rebelltitem1," which is owned and operated by Big Think.

248.    Defendant Big Think includes, adopts, and republishes the defamatory Map with new and additional commentary in a new and separate publication from the prior Article written and published by Defendant Engel.  This publication was made online on May 6, 2019 and has been continuously available through the present.

249.    Defendant Big Think defamed Mr. DeIuliis by making the false statement that "Nicholas DeIuliis" is the CEO or leader of "Consol Energy" in "Pittsburgh."

250.    The foregoing statement and representation is false.

251.    Defendant Big Think defamed Mr. DeIuliis by making the related false statement that "Nicholas DeIuliis" is one of the "Top 100 People Killing the Planet," which was premised upon falsely identifying him as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

252.    The foregoing statement and representation is false.

253.   Defendant Big Think defamed Mr. DeIuliis by making the related false statement that "Nicholas DeIuliis" is a person who should and "can be named and shamed" because "[t]he harm that's being done to the planet can be pinpointed, to a very specific list of companies" that includes a company under the leadership of "Nicholas DeIuliis."  The foregoing was premised upon falsely identifying Mr. DeIuliis as the CEO or leader of CONSOL and/or falsely associating him as the CEO or leader of a coal company.

254.   The foregoing statements and representations are false.

255.   Defendant Big Think made these false statements and representations without privilege or authorization.

256.   Defendant Big Think used these false statements as a basis and reason for then making additional disparaging statements about Mr. DeIuliis, including as identified herein above.

257.   Defendant Big Think made these false statements and representations and disparaging statements in an intentional effort to shame Mr. DeIuliis and damage his personal and professional reputation.

258.   Defendant Big Think's false statements and representations were and are easily shown to be false because both CONSOL and CNX are publicly-traded corporations whose leadership structure is readily available in public filings and elsewhere.

259.   As such, Defendant Big Think either knew but intentionally and maliciously disregarded the truth, or should have known but recklessly disregarded the truth, with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

260.    At a minimum, Defendant Big Think negligently disregarded the truth with respect to the false statements and representations and disparaging statements that falsely tied Mr. DeIuliis to CONSOL and/or to coal.

261.    Mr. DeIuliis is neither a public figure nor a limited-purpose public figure because, with respect to the subject matter of the Map and the Article, he has chosen to not thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved.  Rather, until reacting and defending himself via the filing of this complaint and/or until recently, Mr. DeIuliis has historically avoided engaging with critics like Defendant Big Think.

262.    In the alternative, even if Mr. DeIuliis is deemed to be a limited-purpose public figure, the false statements and representations and disparaging statements were made with actual malice because, as set forth above, because Defendant Big Think knowingly or recklessly disregarded the extensive publicly-filed and available documents as to CONSOL and CNX with the stated intent of targeting Mr. DeIuliis personally and individually for purposes of shaming him and causing him personal and reputational harm.

263.    These false statements and representations and disparaging statements were and are widely disseminated to a global audience as a result, as demonstrated by the search hits, reader comments, and social media notes included herein above.

264.    These false statements and representations and disparaging statements have injured Mr. DeIuliis in his trade, business, or profession.

265.    Among other things, these false statements and representations and disparaging statements are professionally damaging to Mr. DeIuliis because he is branded as being an extreme polluter, and as leading a company that is likewise branded as an extreme polluter, when he has

and is actively working to promote himself as a responsible corporate leader and to promote himself and the company that he leads, CNX, as a clean natural gas industry participant with an extremely-reduced carbon footprint.

266.    Mr. DeIuliis has, in fact, suffered reputational damages, both personally and professionally, as a result of Defendant Big Think's defamation.

267.    These false statements and representations and disparaging statements have additionally caused Mr. DeIuliis special damages in the form of the loss of income and/or potential income and/or things having economic or pecuniary value.

268.    Among other things, these false statements and representations and disparaging statements have caused Mr. DeIuliis special damages because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be environmentally unfriendly and/or a coal industry participant—has or may have:  (i) driven down the stock price of Mr. DeIuliis's company, CNX, including shares owned by Mr. DeIuliis; (ii) caused investors or potential investors to avoid, divest from, or limit investment in Mr. DeIuliis's company, CNX; and (iii) caused Mr. DeIuliis to be passed over or not considered for corporate board positions, speaking engagements, and/or other opportunities for additional income typically available to the CEO of a publicly-traded corporation.

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Big Think on Count VIII and accordingly award relief as set forth in Plaintiff's PRAYER FOR RELIEF below.

**JURY TRIAL DEMAND**

269.    Plaintiff demands a jury trial for all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, upon all the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against each Defendant on the causes of action alleged as follows:

a.      declaring and holding each Defendant liable for defamation;

b.      declaring and holding each Defendant liable for defamation per se;

c.      permanently enjoining Defendants from disseminating the defamatory content and ordering that Defendants take all actions within their power and/or control to remove and delete the defamatory content from web sites and other media;

d.      awarding Plaintiff, and ordering Defendants to jointly and severally pay, compensatory damages in excess of $75,000, including but not limited to monetary damages for loss of investment value, loss of business opportunities, and personal and professional reputational harm;

e.      awarding Plaintiff in the alternative, and ordering Defendants to pay, nominal damages;

f.      awarding Plaintiff, and ordering Defendants to pay, punitive damages, to the extent supported by law;

g.      awarding Plaintiff, and ordering Defendants to pay, reasonable attorneys' fees and costs, to the extent supported by law; and

h.      awarding Plaintiff any other supported damages or relief as is just and proper.

Dated:  April 24, 2020

/s/ Ellen Nunno Corbo

Ellen Nunno Corbo (NY I.D. No. 4856647)
BURNS WHITE LLC
425 5th Avenue, 5th Floor
New York, NY 10016
Tel.:     (609) 315-6933
Fax:      (412) 995-3300
E-mail:  encorbo@burnswhite.com

     and

David B. White (*pro hac vice pending*)
Thomas M. Pohl (*pro hac vice pending*)
BURNS WHITE LLC
Burns White Center
48 26th Street
Pittsburgh, PA  15222
Tel.:     (412) 995-3000
Fax:      (412) 995-3300
E-mail:  dbwhite@burnswhite.com
        tmpohl@burnswhite.com

*Counsel for Plaintiff Nicholas J. DeIuliis*