UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

NICHOLAS J. DEIULIIS,

                    Plaintiff,

           - against -

JORDAN ENGEL, Individually and d/b/a The
Decolonial Atlas,  GOOD WORLDWIDE INC.,
and LEO SHVEDSKY,

                 Defendants.

--------------------------------------------------------------- x

1:20-CV-03252-NRB

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JORDAN ENGEL'S
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

DAVIS WRIGHT TREMAINE LLP

Robert D. Balin
Adam I. Rich
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Tel:  (212) 489-8230
Email:  robertbalin@dwt.com
         adamrich@dwt.com

*Attorneys for Defendant Jordan
Engel, individually and d/b/a The
Decolonial Atlas*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ..................................................................................4

    A.    The Parties .............................................................................4

    B.    Plaintiff's 25-Year Tenure at CONSOL Energy, Inc............................4

    C.    The 2017 Carbon Majors Report .............................................5

    D.    CONSOL's November 2017 Split Into Two Different Companies........................6

    E.    The Decolonial Atlas Article .............................................6

    F.    The Instant Litigation.........................................................8

ARGUMENT .....................................................................................................9

I.    PLAINTIFF'S DEFAMATION CLAIMS FAIL AS A MATTER OF LAW ..................10

    A.    Choice of Law Is Not Determinative of Plaintiffs' Defamation Claims. .............10

    B.    Calling Plaintiff One of the "Top-100 People Killing the Planet" is Quintessential, Nonactionable Opinion. ................................................12

    C.    The Fact That Plaintiff Was the CEO of CONSOL is Substantially True............16

        1.    Substantial truth is appropriately decided on a 12(b)(6) motion. ..............18

        2.    Plaintiff's temporal distinction does not save his claim. ..........................19

    D.    Plaintiff Fails to Plead a Claim for Defamation by Implication ..........................22

II.    PLAINTIFF'S DUPLICATIVE FALSE LIGHT CLAIM ALSO FAILS AS A MATTER OF LAW ................................................................................23

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdellatif v. Alza Wrae Indus. Co.*,
  No. 18-cv-2297, 2019 WL 1284689 (E.D. Penn. Mar. 20, 2019) ..........................................18

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013)..............................................................................10, 11

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011)....................................................................................................20

*Anyanwu v. Columbia Broad. Sys., Inc.*,
  887 F. Supp. 690 (S.D.N.Y. 1995) ........................................................................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................9, 25

*Baiqiao Tang v. Wengui Guo*,
  No. 17 Civ. 9031 (JFK), 2019 WL 6169940 (S.D.N.Y. Nov. 20, 2019)................................24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................25

*Berwick v. New World Network Int'l, Ltd.*,
  No. 06 Civ. 2641(JGK), 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ............................23, 24

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015)....................................................................................................25

*Biro v. Condé Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012)............................................................................ *passim*

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ..............................2

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
  No. 11 Civ. 8921(DAB), 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ................................5

*Boyd v. Nationwide Mut. Ins. Co.*,
  208 F.3d 406 (2d Cir. 2000)....................................................................................................24

*Brahms v. Carver*,
  33 F. Supp. 3d 192 (E.D.N.Y. 2014) ....................................................................................16

*Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*,
  654 F.App'x 80 (3d Cir. 2016) .......................................................................22

*Celle v. Filipino Reporter Enters., Inc.*,
  209 F.3d 163 (2d Cir. 2000)...........................................................................12

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..............................................................................5

*Chao v. Mount Sinai Hosp.*,
  No. 10 CV 2869(HB), 2010 WL 5222118 (S.D.N.Y. Dec. 17, 2010), *aff'd*,
  476 F. App'x 892 (2d Cir. 2012) .....................................................................23

*Chung v. Better Health Plan*,
  No. 96 CIV. 7310(JGK), 1997 WL 379706 (S.D.N.Y. July 9, 1997) ..............18, 21

*Colon v. Town of W. Hartford*,
  No. 3:00CV168 (AHN), 2001 WL 45464 (D. Conn. Jan. 5, 2001).......................12

*Contemporary Mission, Inc. v. N.Y. Times Co.*,
  665 F. Supp. 248 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612 (2d Cir. 1988)................18

*Deaton v. Napoli*,
  No. 2:17-CV-04592 (JFB) (GRB), 2019 WL 156930 (E.D.N.Y. Jan. 10, 2019)...................11

*Doron Precision Sys. v. FAAC, Inc.*,
  423 F. Supp. 2d 173 (S.D.N.Y. 2006)..................................................................5

*Egiazaryan v. Zalmayev*,
  880 F. Supp. 2d 494 (S.D.N.Y. 2012)............................................................15, 25

*Emekekwue v. Offor*,
  26 F. Supp. 3d 348 (M.D. Pa. 2014) .................................................................17

*Fanelle v. Lojack Corp.*,
  No. CIV.A. 99-4292, 2000 WL 1801270 (E.D. Pa. Dec. 7, 2000).........................23

*Frascatore v. Blake*,
  344 F. Supp. 3d 481 (S.D.N.Y. 2018)............................................................13, 16

*Garrison v. Louisiana*,
  379 U.S. 64 (1964).........................................................................................10

*Graboff v. Colleran Firm*,
  744 F.3d 128 (3d Cir. 2014)....................................................................11, 17, 24

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
    398 U.S. 6 (1970)............................................................................................15

*Guccione v. Hustler Magazine, Inc.*,
    800 F.2d 298 (2d Cir. 1986)........................................................... *passim*

*Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004).....................................................................10, 11

*Jewell v. NYP Holdings, Inc.*,
    23 F. Supp. 2d 348 (S.D.N.Y. 1998)............................................................18

*LaFaro v. New York City Cardiothoracic Grp.*,
    570 F.3d 471 (2d Cir. 2009)..........................................................................9

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    830 F.2d 1287 (D.C. Cir. 1988) ...................................................................10

*Marin v. Erie Times*,
    525 F. App'x 74 (3d Cir. 2013) ...................................................................22

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)...............................................................................3, 17

*McCafferty v. Newsweek Media Grp., Ltd.*,
    955 F.3d 352 (3d Cir. 2020)..........................................................................11

*McMillan v. Togus Reg'l Office, Dep't of Veterans Affairs*,
    294 F. Supp. 2d 305 (E.D.N.Y. 2003), *aff'd*, 120 F. App'x 849 (2d Cir. 2005)............2, 12, 24

*Michalow v. Pasquerilla*,
    No. 2:16-CV-00464-CRE, 2016 WL 7404560 (W.D. Penn. Dec. 22, 2016) .........................22

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 .....................................................................................10, 12, 14

*Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*,
    326 F. Supp. 3d 26 (S.D.N.Y. 2018).............................................................16

*Mott v. Anheuser-Busch, Inc.*,
    910 F. Supp. 868 (N.D.N.Y. 1995), *aff'd*, 112 F.3d 504 (2d Cir. 1996) ................................14

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*,
    759 F.2d 219 (2d Cir. 1985).........................................................................13

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964).....................................................................................2

v

*Oakley v. Dolan*,
  No. 17-cv-6903 (RJS), 2020 WL 818920 (S.D.N.Y. Feb. 19, 2020), *appeal
  filed*, No. 20-642 (2d Cir. Feb. 20, 2020) .........................................................................13, 16

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
  418 U.S. 264 (1974).................................................................................................................3, 15

*Pace v. Baker-White*,
  432 F. Supp. 3d 495 (E.D. Pa. 2020), *appeal filed*, No. 20-1308 (3d Cir. Feb.
  13, 2020) and No. 20-1401 (3d Cir. Feb. 28, 2020) ........................................................22, 25

*Pedraglio Loli v. Citibank Inc.*,
  173 F.3d 845 (2d Cir. 1999).......................................................................................................24

*Philadelphia Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986)........................................................................................................2, 10, 17

*Russo v. Navient Sols., LLC*,
  No. 2:16-cv-00316, 2018 WL 1474354 (D. Vt. Mar. 23 2018)..................................................5

*Seaton v. TripAdvisor LLC*,
  728 F.3d 592 (6th Cir. 2013) ....................................................................................................14

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017)................................................................................................17, 18

*Time, Inc. v. Hill*,
  385 U.S. 374 (1967)....................................................................................................................24

*Torain v. Liu*,
  279 F. App'x 46 (2d Cir. 2008) ....................................................................................13, 14, 15

*Verragio, Ltd v. AE Jewelers, Inc.*,
  No. 15 Civ. 6500 (CM), 2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017) .................................11

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015).........................................................................................5

*Wexler v. Dorsey & Whitney LLP*,
  815 F. App'x 618 (2d Cir. 2020) .............................................................................................13

**State Cases**

*Covino v. Hagemann*,
  165 Misc. 2d 465 (Sup. Ct. Richmond Cty. 1995) ..................................................................14

*Gross v. N.Y. Times Co.*,
  82 N.Y.2d 146 (1993) ..................................................................................12

*Hughes v. Hughes*,
  19 Cal. Rptr. 3d 247 (Cal. Ct. App. 2004) ...............................................21

*Jacobus v. Trump*,
  55 Misc. 3d 470 (Sup. Ct. N.Y. Cty. 2017), *aff'd*, 156 A.D.3d 452 (1st Dep't
  2017) ...........................................................................................................15

*Jorg v. Cincinnati Black United Front*,
  792 N.E.2d 781 (Ohio Ct. App. 2003) ......................................................15

*Livingston v. Murray*,
  612 A.2d 443 (Pa. Super. Ct. 1992) ..........................................................23

*Sandals Resorts Int'l, Ltd. v. Google, Inc.*,
  27 Misc. 3d 1207(A) (Sup. Ct. N.Y. Cty. 2018) .......................................16

*Stepanov v. Dow Jones & Co.*,
  120 A.D.3d 28 (1st Dep't 2014) .................................................................22

*ToDay's Housing v. Times Shamrock Commc'ns, Inc.*,
  21 A.3d 1209 (Penn. Super. Ct. 2011) .......................................................22

*Vice v. Kasprzak*,
  318 S.W.3d 1 (Tex. Ct. App. 2009) ...........................................................15

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................25

Fed. R. Civ. P. 9(b) ...............................................................................................25

Fed. R. Civ. P. 12(b)(6).............................................................................1, 13, 18

**Constitutional Provisions**

United States Constitution, First Amendment .................................................. *passim*

**Other Authorities**

https://www.epa.gov/report-environment/greenhouse-gases (last visited Oct. 12,
  2020) ...........................................................................................................14

Restatement (Second) of Torts.............................................................................24

Defendant Jordan Engel ("Engel"), d/b/a The Decolonial Atlas, respectfully submits this memorandum of law in support of his motion to dismiss the First Amended Complaint of Plaintiff Nicholas DeIuliis ("Plaintiff") with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This libel suit is brought by the CEO of a fossil fuel company who seeks to enjoin and collect money damages from a volunteer-run website that named him one of the "Top 100 People Killing the Planet." Since the challenged statement is classic, nonactionable opinion, Plaintiff's claims fail as a matter of law.

In April 2019, Engel published an article on his website — The Decolonial Atlas — titled, "Names and Locations of the Top 100 People Killing the Planet" (the "Article"). Citing data from a British study that tracked air pollution during the period 1988-2015, the Article stated that, "[j]ust 100 companies are responsible for more than 70% of the world's greenhouse gas emissions since 1988." The *only* mention of Plaintiff in the Article was in an illustrative cartogram identifying him as the head of CONSOL Energy, Inc. ("CONSOL"), alongside 99 other executives from the top-polluting oil, coal, and gas companies. The Article further stated that, "[t]he key decision-makers at these companies have the privilege of relative anonymity, and with this map, we're trying to pull back that veil and call them out. These guys should feel the same personal responsibility for saving the planet that we all feel." Engel published an update in September 2019, reporting that 14 of the companies featured on the list had changed CEOs, including CONSOL, whose new chief executive was accurately identified as James A. Brock. The original cartogram identifying Plaintiff was left unchanged.

In his Amended Complaint, Plaintiff *admits* that he was the President and CEO of CONSOL during the period described in the Article, and he does not dispute (nor could he) that under his leadership, the company was among the top-100 carbon polluters in the world. Instead,

Plaintiff's entire theory of liability is that he was "falsely and incorrectly identified," because his company was no longer called CONSOL when the Article was published in 2019.  As alleged in the Amended Complaint, CONSOL split into two different entities in November 2017:  a coal company called CONSOL and a natural gas company called CNX Resources Corp. ("CNX"). Since that split, Plaintiff has led CNX, not CONSOL.  In other words, even though Plaintiff admits that he *remains* President and CEO of the company "formerly named CONSOL Energy Inc.," First Amended Complaint ("Am. Compl.") ¶ 22, he contends that it was somehow defamatory to associate him with CONSOL.

Plaintiff's baseless claims are squarely precluded by the First Amendment, which guarantees freedom of the press and protects clear statements of opinion, particularly on matters of public concern.  *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986). Where, as here, a wealthy plaintiff tries to silence media criticism by commencing a meritless libel suit, it offends First Amendment values and threatens to deter others from holding the rich and powerful to account.  *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (recognizing the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open").  In keeping with this "profound national commitment," it is imperative that such claims be dismissed expeditiously to prevent a chilling of protected expression that is critical to the functioning of our democratic society.  *See McMillan v. Togus Reg'l Office, Dep't of Veterans Affairs*, 294 F. Supp. 2d 305, 319 (E.D.N.Y. 2003) ("The Supreme Court has recognized the potential chilling effect of a baseless lawsuit on the exercise of a defendant's First Amendment rights.") (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340–41(1974)), *aff'd*, 120 F. App'x 849 (2d Cir. 2005); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) ( In "defamation cases, Rule 12(b)(6) not only protects

against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive."), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

The Amended Complaint plainly fails to state a defamation claim.  Labeling Plaintiff one of the "top-100 People Killing the Planet" is precisely the kind of "rhetorical hyperbole," and "lusty and imaginative expression of []contempt," that the Supreme Court has recognized as quintessential, nonactionable opinion.  *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 294–86 (1974).  Since Plaintiff cannot seriously dispute this, he contends that it was "false" to associate him with CONSOL.  This argument must be rejected because it is refuted by Plaintiff's own admission in his Amended Complaint that, since 2011, he has been President of the company formerly called CONSOL – and CEO since 2014.  Am. Compl. ¶ 22.  Because the data described in the Article relates directly to the period when Plaintiff was admittedly the head of CONSOL, the statement is *substantially true*, and thus nonactionable as a matter of law.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17 (1991) ("The common law of libel . . . overlooks minor inaccuracies and concentrates upon substantial truth."); *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) ("truth is an absolute, unqualified defense to a civil defamation action, and substantial truth suffices to defeat a charge of libel.") (internal citation and quotation marks omitted).  Moreover, to the extent that Plaintiff tries to plead around the substantial truth of the Article by suggesting that it gives rise to claim for defamation by implication, that theory is baseless too because he has not come close to alleging any facts that could give rise to a plausible inference of defamatory implication, much less the "rigorous showing" that is required.

Finally, Plaintiff's attempt to recast his defective defamation claim as one for "invasion of privacy/false light" also fails because no such tort is recognized under applicable New York law.  In the alternative, even if the Court finds that Pennsylvania law applies, Plaintiff's false light claim must still be dismissed because it is impermissibly duplicative of Plaintiff's defamation claim, and because the Amended Complaint fails to allege actual malice.

Since Plaintiff's claims fail as a matter of law, the Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.     The Parties

Plaintiff is "a businessman in Pittsburgh, Pennsylvania, with years of experience as a leader in the energy industry."  Am. Compl. ¶ 21.  The Amended Complaint alleges that Defendant Engel resides and conducts business in New York, "including doing business as 'The Decolonial Atlas.'"  *Id.* ¶ 11.  Engel publishes a non-profit, "volunteer-run" blog called The Decolonial Atlas, which "prioritizes its information, namely their printed maps, for indigenous schools and cultural centers."[1]  *Id.* ¶ 43.  The mission of The Decolonial Atlas is to create a "growing collection of maps" to "help us to challenge our relationships with the land, people, and state."  *Id.* ¶ 45.

### B.     Plaintiff's 25-Year Tenure at CONSOL Energy, Inc.

CONSOL is an energy company with "more than 150 years of prior involvement in the traditional coal industry."  Am. Compl. ¶ 26.  Plaintiff's current "executive bio" on the CNX corporate website states that, "[p]rior to the separation of CONSOL Energy Inc. into two

---

[1]  *See* https://decolonial atlas.wordpress.com.

4

separate companies [in November 2017], Mr. DeIuliis had more than 25 years of experience with the Company [*i.e.*, CONSOL] and in that time has held the positions of President and Chief Executive Officer, Chief Operating Officer, Senior Vice President – Strategic Planning, and earlier in his career various engineering positions."  Declaration of Robert D. Balin ("Balin Decl.") Ex. A.[2]  Plaintiff alleges in the Amended Complaint that he was named President of CONSOL in 2011, and took on the additional title of CEO of CONSOL in 2014.  Am. Compl. ¶ 22.  During the time that Plaintiff led CONSOL as President and CEO, the company "owned and operated both natural gas assets and coal assets."  *Id.* ¶ 25.  Plaintiff also "was a Director and Chairman of the Board of the general partner of CONSOL Coal Resources LP (formerly known as CNX Coal Resources LP) from March 16, 2015 until November 28, 2017."  Balin Decl. Ex. A.

## C.     The 2017 Carbon Majors Report

On July 10, 2017, *The Guardian* posted an article on its website titled, "Just 100 companies responsible for 71% of global emissions, study says" (the "*Guardian* Article").  Balin Decl. Ex. B.  The *Guardian* Article cited a research study conducted by the U.K.-based Carbon Disclosure Project (the "Carbon Majors Report"), which identified CONSOL as among the top-100 carbon polluting companies in the world, based on cumulative emissions from 1988 to 2015 (just behind the National Oil Corporation of Libya, and ahead of Ukraine Coal).  *Id.*[3]

---

[2] On a 12(b)(6) motion, the Court can take judicial notice of a publicly available website, particularly where, as here, Plaintiff cannot seriously challenge its authenticity or accuracy.  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015); *Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006); *Russo v. Navient Sols., LLC*, No. 2:16-cv-00316, 2018 WL 1474354, at *6 (D. Vt. Mar. 23 2018); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921(DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013).

[3] The *Guardian* Article is incorporated by reference into the Amended Complaint because it is referenced as a source in Exhibit 1 to the Amended Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he

**D.     CONSOL's November 2017 Split Into Two Different Companies**

On November 28, 2017, CONSOL formally split into two companies: its coal operations continued to be managed under the name CONSOL, but its gas operations would subsequently be managed by a separate company called CNX Resources Corporation ("CNX"). Am. Compl. ¶¶ 22, 24, 26-28. After the 2017 transaction, Plaintiff served as President and CEO of CNX.[4] *Id.* ¶ 22.

**E.     The Decolonial Atlas Article**

On April 27, 2019, The Decolonial Atlas "published an article and an accompanying map," titled "Names and Locations of the Top 100 People Killing the Planet." *Id.* ¶ 46, Ex. 1. The Article identifies the Carbon Majors Report as one of its sources, and provides a link to the *Guardian* Article. Am. Comp. Ex. 1. The *only* mention of Plaintiff in the Article is in an illustrative cartogram that identifies him alongside 99 other executives from the top-polluting companies named in the Carbon Majors Report. *See* **Figure 1.**

---

complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted).

[4] Plaintiff's Amended Complaint seeks to deliberately obfuscate this point. Plaintiff alleges that he "has never served as an officer, director, or employee of CONSOL," Am. Compl. ¶ 29, but he defines "CONSOL" as the post-November 2017 incarnation of the company, *id.* ¶ 28, and concedes that "CNX," the company he admits to lead as President and CEO, was "formerly named CONSOL Energy, Inc.," *id.* ¶ 22.

**Figure 1**:  Screenshot from "Names and Location of the Top 100 People Killing the Planet"



*Closeup of the top 32 North Americans killing the planet.*

Am. Compl. Ex. A.  The text accompanying the cartogram states in part:

> Just 100 companies are responsible for more than 70% of the world's greenhouse
> gas emissions since 1988.  The guys who run those companies – and they *are*
> mostly guys – have gotten rich on the backs of literally all life on Earth.  Their
> business model relies on the destruction of the only home humanity has ever
> known.  Meanwhile, we misdirect our outrage at our neighbors, friends, and family
> for using plastic straws or not recycling.  If there is anyone who deserves the outrage
> of all 7.5 billion of us, it's these 100 people right here.  Combined, they control the
> majority of the world's mineral rights – the "right" to exploit the remaining

> unextracted oil, gas, and coal.  They need to know that we won't leave them alone until they agree to *Keep It In The Ground*. Not just their companies, but *them*. Now it's personal. . . . The key decision-makers at these companies have the privilege of relative anonymity, and with this map, we're trying to pull back that veil and call them out. These guys should feel the same personal responsibility for saving the planet that we all feel.

*Id.* (emphasis in original).  In September 2019, Engel updated the Article to note that 14 of the companies listed had changed CEOs, including CONSOL, whose new CEO was accurately identified as James A. Brock.  The original cartogram identifying Plaintiff and the 99 other executives as the "Top 100 People Killing the Planet" was unchanged.  *Id.*; Am. Compl. ¶¶ 67-69.

### F.    The Instant Litigation.

Plaintiff commenced this litigation on April 24, 2020.  The original Complaint alleged claims against Engel for defamation and defamation per se.  Dkt. 1.  By order dated August 28, 2020, the Court granted Plaintiff leave to file an amended complaint so that he could "cure any alleged deficiencies raised" by defendants in their initial pre-dismissal motion letters. Dkt. 44.  Plaintiff then filed a First Amended Complaint on September 11, 2020.[5]  Dkt. 45.  But despite being given an opportunity to cure the deficiencies in his initial pleading, Plaintiff made no material changes to his claims against Engel, beyond adding a new claim for invasion of privacy/false light ("false light") arising from the exact same facts as his defamation claims. Am. Compl. ¶¶ 214-22.  The Amended Complaint alleges that Engel is liable for defamation per se and defamation because the statements, "'Nicholas DeIuliis' is the CEO or leader of 'Consol Energy' in 'Pittsburgh'," and that he "is one of the 'Top 100 People Killing the Planet,'" allegedly are "false."  *Id.* ¶¶ 92, 94, 115, 117.  The Amended Complaint also asserts duplicative

---

[5] In addition to Engel, the Amended Complaint names Good Worldwide, Inc. and Leo Shvedsky as defendants.

claims for defamation and defamation per se arising from the update Engel added to the article in September 2019. *Id.* ¶¶ 134-66. While Plaintiff does not expressly allege a separate claim for defamation by implication, he alleges repeatedly that Engel is liable for the challenged statements "because public perception of Mr. DeIuliis as being a polluter—and by association, the implication that any company that he leads must be environmental unfriendly and/or a coal industry participant," has caused damages. *Id.* ¶¶ 110, 133, 149, 166. Plaintiff asks the Court to permanently enjoin Engel from "disseminating the defamatory content," and asks that the Court order Engel to "remove and delete" the Article from "web sites and other media." *Id.* at 38. Plaintiff also seeks punitive damages, compensatory damages, and attorneys' fees. *Id.*

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also LaFaro v. New York City Cardiothoracic Grp.*, 570 F.3d 471, 475–76 (2d Cir. 2009) ("We are not bound to accept as true legal conclusions couched as factual allegations."). Where the well-pleaded facts do not "plausibly give rise to an entitlement to relief," dismissal is appropriate. *Iqbal*, 556 U.S. at 679. Here, the Amended Complaint cannot withstand dismissal because it contains no allegations that could plausibly give rise to a claim for either defamation or false light. Since Plaintiff has already been given an

opportunity to salvage his claims, these defects are fatal and the Amended Complaint should be dismissed with prejudice.

## I.     PLAINTIFF'S DEFAMATION CLAIMS FAIL AS A MATTER OF LAW

### A.     Choice of Law Is Not Determinative of Plaintiffs' Defamation Claims.

Plaintiff's defamation claims are clearly precluded by the First Amendment and dismissal is warranted on that basis alone.  *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19.[6]  But to the extent that state law is implicated, the Court is free to apply New York law, because choice of law is not determinative here.

"Federal courts sitting in diversity look to the choice-of-law rules of the forum state," *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004), and "[i]n tort actions, New York courts apply the substantive law of the jurisdiction that has the most significant interest in the specific issue raised in the litigation," *Adelson v. Harris*, 973 F. Supp. 2d 467, 476 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).  "Because the locus of the tort is where the plaintiff suffered injury, often the Court can resolve the choice of law analysis [in a defamation action] simply by observing the state of plaintiff's domicile and presuming that the publication injured him in that state."  *Id.* (quoting *Condit v. Dunne*, 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004).  In multistate defamation claims, however, that presumption can be rebutted by additional facts alleged in the complaint, such as the "the state where plaintiff

---

[6] The First Amendment prohibits the imposition of civil liability for truthful statements, whatever the underlying state doctrine may provide, and requires the plaintiff to establish the falsity of the challenged statements.  *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *Hepps*, 475 U.S. at 776–78.  Accordingly, this motion is governed by the Second Circuit's interpretation of federal constitutional law.  *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 830 F.2d 1287, 1294 (D.C. Cir. 1988) (resolving defamation claim "as a matter of federal constitutional law" because "no reasonable jury could find by a fair preponderance of the evidence that [the challenged statements] are false").

in fact suffered greatest harm," and "the state of the publisher's domicile or incorporation." *Id.* at 477 n.6.

The Amended Complaint alleges that Plaintiff is domiciled in Pennsylvania, Am. Compl. ¶ 10, but alleges that New York is the base of operations for Defendants, *id.* ¶¶ 11-13, that Plaintiff's company is listed on the New York Stock Exchange *id.* ¶¶ 23, 28, and that Plaintiff has suffered injury to his reputation among the investing community and "other companies," *id.* ¶¶ 9, 37, 39, many of which are presumably located in New York.  The law of either Pennsylvania or New York could, therefore, arguably apply.  Ultimately, however, "[c]hoice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict." *Int'l Bus. Mach. Corp.*, 363 F.3d at 143.  Here there is no material conflict between the substantive law of New York and Pennsylvania, because opinion and substantial truth are recognized as complete defenses to defamation in both jurisdictions.[7]

To the extent that state law is relevant, therefore, the Court is free to apply the law of New York.  *Id.* ("In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").[8]

_____

[7] *See, e.g.*, *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) ("Under New York law . . . substantial truth suffices to defeat a charge of libel.") (citation and internal quotation marks omitted); *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (same for Pennsylvania law); *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) (statement of nonactionable "pure opinion" includes one that is "accompanied by a recitation of the facts upon which it is based") (citation omitted); *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) ("Under the First Amendment, opinions based on disclosed facts are absolutely privileged, no matter how derogatory they are.") (citations and internal quotation marks omitted).

[8] *See also Verragio, Ltd v. AE Jewelers, Inc.*, No. 15 Civ. 6500 (CM), 2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017) (finding no conflict between law of Wisconsin and New York and therefore applying New York law to claim for defamation); *Deaton v. Napoli*, No. 2:17-CV-04592 (JFB) (GRB), 2019 WL 156930, at *7 (E.D.N.Y. Jan. 10, 2019) (applying New York law to defamation claim asserted by Rhode Island plaintiff).

**B.      Calling Plaintiff One of the "Top-100 People Killing the Planet" is Quintessential, Nonactionable Opinion.**

Plaintiff alleges that Engel defamed him by "'call[ing] [him] out' as one of 100 'key decision makers,' who is an 'ecocidal planet killer' that is 'killing the planet.'" Am Compl. ¶ 3. But these hyperbolic, non-factual statements cannot give rise to a claim for defamation; as a matter of law, they are quintessential, nonactionable, pure opinion.

It is a bedrock First Amendment principle that a libel lawsuit must be based on statements of fact—not expressions of opinion. "[A] statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved." *Milkovich*, 497 U.S. at 19–20 (citing *Hepps*, 475 U.S. at 777–78). This "ensures that a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection" and "provides assurance that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation." *Id.* at 20 (citation and internal quotation marks omitted). *See also Gertz*, 418 U.S. at 339–40 ("However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."); *Colon v. Town of W. Hartford*, No. 3:00CV168 (AHN), 2001 WL 45464, at *5 (D. Conn. Jan. 5, 2001) ("An author is constitutionally permitted to use exaggeration, hyperbole, ridicule, sarcasm, stylistic touches and figurative expressions to embellish disclosed facts.") (citing *Milkovich*, 497 U.S. at 20). Protection for opinion is even greater under New York law than under the U.S. Constitution. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) ("[T]he New York Constitution provides for *absolute protection* of opinions."); *Gross v. N.Y. Times Co.*,

12

82 N.Y.2d 146, 152 (1993) (noting New York's "more flexible" and "decidedly more [speech]

protective" test for what constitutes a nonactionable opinion).

    Whether a statement is one of fact or opinion is a threshold question of law for the court.

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 223-24 (2d Cir. 1985).[9]  In analyzing this

question, New York courts consider:

> (1) whether the specific language in issue has a precise meaning which is readily
> understood; (2) whether the statements are capable of being proven true or false;
> and (3) whether either the full context of the communication in which the statement
> appears or the broader social context and surrounding circumstances are such as to
> signal . . . readers or listeners that what is being read or heard is likely to be opinion,
> not fact.

*Wexler*, 815 F. App'x at 621 (citation omitted).  If a statement is a non-factual opinion, courts

look at whether the speaker discloses the facts upon which it is based; if so, it is "pure opinion,"

entitled to absolute protection.  *Oakley v. Dolan*, No. 17-cv-6903 (RJS), 2020 WL 818920, at *8

(S.D.N.Y. Feb. 19, 2020) ("'An expression of pure opinion is not actionable' because '[i]t

receives the Federal constitutional protection accorded to the expression of ideas, no matter

how vituperative or unreasonable it may be.'") (citation omitted), *appeal filed*, No. 20-642 (2d

Cir. Feb. 20, 2020).[10]

---

[9] Indeed, courts in this circuit routinely grant pre-answer Rule 12(b)(6) dismissal motions where, as here, the challenged statements constitute non-actionable opinion.  *See, e.g.*, *Wexler v. Dorsey & Whitney LLP*, 815 F. App'x 618, 621 (2d Cir. 2020); *Torain v. Liu*, 279 F. App'x 46, 46 (2d Cir. 2008); *Biro*, 883 F. Supp. 2d at 472.

[10] *See also Biro*, 883 F. Supp. 2d at 461 (statement of nonactionable "pure opinion" includes one that is "accompanied by a recitation of the facts upon which it is based") (citation omitted); *Frascatore v. Blake*, 344 F. Supp. 3d 481, 494 (S.D.N.Y. 2018) (quoting *Medcalf v. Walsh*, 938 F.Supp.2d 478, 486 (S.D.N.Y. 2013) ("'[A] statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts' is protected as a statement of opinion and thus not a false statement of fact.").

13

Turning to the challenged opinion here, it is difficult to conceive of a subject that is *more* a matter of public concern than the environmental effects of carbon emissions.[11]  Indeed, environmental issues less far-reaching than climate change have been held to be matters of public concern.  *See, e.g.*, *Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 874 (N.D.N.Y. 1995) (water pollution within the sphere of public concern), *aff'd*, 112 F.3d 504 (2d Cir. 1996).  Thus, the statement that Plaintiff is "killing the planet," based upon the high volume of his company's carbon emissions, "will receive full constitutional protection," so long as it "does not contain a provably false factual connotation."  *Milkovich*, 497 U.S. at 20.

"At bottom, the inquiry is whether a reasonable listener is likely to have understood the statements as conveying provable facts about the plaintiff."  *Torain*, 279 F. App'x at 46. Accusing a corporate CEO of "killing the planet" or being an "ecocidal planet killer" is exactly the kind of "imaginative expression" or "loose, figurative, or hyperbolic language" that is nonactionable under the First Amendment.  *Milkovich*, 497 U.S. at 20–21.  Indeed, accusing somebody of "killing the planet" is plainly subjective and incapable of precise meaning, thus incapable of being proven false.  *See, e.g.*, *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013) (inclusion of plaintiff on list of "2011 Dirtiest Hotels" was nonactionable since "'[d]irtiest' is a loose, hyperbolic term because it is the superlative of an adjective that conveys an inherently subjective concept"); *Covino v. Hagemann*, 165 Misc. 2d 465, 470, 472–73 (Sup. Ct. Richmond Cty. 1995) ("the epithet 'racially insensitive' cannot be verified as true or false"

---

[11] According to the U.S. Environmental Protection Agency, "[g]reenhouse gases, such as carbon dioxide . . . trap some of the Earth's outgoing energy, thus retaining heat in the atmosphere."  https://www.epa.gov/report-environment/greenhouse-gases (last visited Oct. 12, 2020).  "This heat trapping causes changes in the radiative balance of the Earth . . . affecting various aspects of climate, including surface air and ocean temperatures, precipitation, and sea levels."  *Id.*

and it has "no meaning which is readily understood"); *Jacobus v. Trump*, 55 Misc. 3d 470 (Sup. Ct. N.Y. Cty. 2017) (tweets calling plaintiff "dumb" and a "loser" who "begged" for a job with Presidential campaign held to be easily recognizable as opinion by a reasonable reader), *aff'd*, 156 A.D.3d 452 (1st Dep't 2017).  Even accusations of criminal behavior are nonactionable when the surrounding context shows they are used in loose, hyperbolic fashion.  *See Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (defendant's use of the word "blackmail" was not meant as a literal accusation that plaintiff had committed the crime of blackmail); *Letter Carriers*, 418 U.S. at 284–85 (description of plaintiff as a "traitor" was not a literal accusation that plaintiff had committed the crime of treason); *Torain*, 279 F. App'x at 46 (statement that plaintiff was a "sick racist pedophile" and "child predator" held to be rhetoric and hyperbole).

Furthermore, the context of the Article makes clear that Engel was expressing his opinion about the existential threat caused by high-polluting "carbon majors" like CONSOL.  The very first sentence of the Article states the basis for Engel's critique:  "Just 100 companies are responsible for more than 70% of the world's greenhouse gas emissions since 1988."  Am. Compl. Ex. A.  Based on that fact, Engel observes that concerned citizens should re-direct some of the ire currently directed at individual actors, and apply more pressure on the small number of companies (and their individual executives) that contribute disproportionately to — and profit from — exploiting fossil fuels.  *See id.*  In other words, the Article is a call to action and clear advocacy; taken in that context, a reasonable reader would have understood "killing the planet" to signal opinion.  *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 510 (S.D.N.Y. 2012) (epithets, fiery rhetoric, and hyperbole signal to a reasonable reader that the statement is nonactionable advocacy); *Vice v. Kasprzak*, 318 S.W.3d 1, 22 (Tex. Ct. App. 2009) ("call to action" based on defendant's opinion that plaintiff's behavior was unethical held to be non-defamatory); *Jorg v.*

15

*Cincinnati Black United Front*, 792 N.E.2d 781, 786 (Ohio Ct. App. 2003) (false accusations of killing and raping found to be non-defamatory in context of a "call to action" "meant to cause outrage in the reader").

The statement that Plaintiff is among the top-100 "planet killers" is also fully protected by the First Amendment because it is pure opinion based upon disclosed fact.  *Oakley*, 2020 WL 818920, at *8; *Biro*, 883 F. Supp. 2d at 461; *Frascatore*, 344 F. Supp. 3d at 498.  Beyond the facts stated above, the Article also includes a hyperlink to the *Guardian* Article, which in turn links to the Carbon Majors Report that identifies each of the companies named in the Engel's Article.  Am. Compl. Ex. A.  *See Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 37–38 (S.D.N.Y. 2018) (dismissing defamation claim in part because it was clear that the basis for the speaker's opinion was an article to which speaker provided a link); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (dismissing defamation claim because the internet posting at issue "was accompanied by the news article on which it was so obviously based"); *Sandals Resorts Int'l, Ltd. v. Google, Inc.*, 27 Misc. 3d 1207(A) (Sup. Ct. N.Y. Cty. 2018) (hyperlinks in email constitute disclosed facts).  Accusing Plaintiff of "killing the planet" is pure opinion, nonactionable as a matter of law.

### C.   The Fact That Plaintiff Was the CEO of CONSOL is Substantially True.

Since "killing the planet" is clearly opinion, Plaintiff's only argument seems to be that the statement is nevertheless actionable because it is based on the "false" fact that Plaintiff was the CEO of CONSOL in 2019.  But that argument is facially absurd given that Plaintiff admits to being President and CEO of CONSOL when the Carbon Majors Report was released, advertises in his online "executive bio" that he was a senior executive for nearly the entire period reflected in the report (1988-2015), and alleges in his Amended Complaint that he remains today as

16

President and CEO of the company "formerly named CONOL Energy, Inc."  Am. Compl. ¶ 22;

Balin Decl. Ex. A.  Since the plain words of the Article make clear that its focus was retroactive

— CONSOL's carbon emissions during the period 1988-2015 — Plaintiff's hypertechnical

temporal distinction is meritless.  Linking Plaintiff to CONSOL is *substantially true* as a matter

of law.

It is axiomatic that "truth is an absolute, unqualified defense to a civil defamation action,

and 'substantial truth' suffices to defeat a charge of libel."  *Guccione*, 800 F.2d at 301 (internal

citation omitted).[12]  "Minor inaccuracies do not amount to falsity so long as 'the substance, the

gist, the sting, of the libelous charge be justified.'"  *Masson*, 501 U.S. at 517 (citation omitted).

*See also id.* at 516 ("The common law of libel … overlooks minor inaccuracies and concentrates

upon substantial truth.").[13]

For these reasons, it is black letter law that no liability may arise from a statement that is

substantially true.  "[T]he substantial truth defense permits a certain amount of leeway as to

accuracy."  *Guccione*, 800 F.2d at 301.  "Put another way, the statement is not considered false

unless it would have a different effect on the mind of the reader from that which the pleaded

truth would have produced."  *Masson*, 501 U.S. at 516 (citation and internal quotation marks

omitted).  "When the truth is so near to the facts as published that fine and shaded distinctions

must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal

harm has been done."  *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242–

---

[12] *See also Hepps*, 475 U.S. at 777 ("Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned.") (quoting *Garrison*, 379 U.S. at 74).

[13] *See also Graboff*, 744 F.3d at 136 (under Pennsylvania law, even if the challenged statement "contains minor inaccuracies and errors," a defamation claims must fail "so long as it is 'substantially true'"); *Emekekwue v. Offor*, 26 F. Supp. 3d 348, 362 (M.D. Pa. 2014) ("The test is whether the [alleged] libel as published would have a different effect on the mind of the reader from which the pleaded truth would have produced.") (citation omitted).

43 (2d Cir. 2017) (citation and internal quotation marks omitted). And "[w]hen a court interprets a publication in an action for defamation, the entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." *Id.* at 243 (citation, internal quotation marks and alterations omitted).

### 1. Substantial truth is appropriately decided on a 12(b)(6) motion.

Plaintiff contends that substantial truth cannot be decided on a pre-answer motion to dismiss. Dkt. 48. That is incorrect. Where it is apparent that a challenged statement is substantially true based on the ***undisputed facts alleged in the complaint***, courts routinely dismiss defamation claims at the pleading stage. *See, e.g.*, *Tannerite Sports*, 864 F.3d at 247 (affirming dismissal of defamation claim involving statements held to be substantially true and citing cases where "several courts of appeals have affirmed dismissals of defamation claims because the material in the complaint cannot be reasonably understood except as being true or substantially true").[14]

Since Plaintiff admits in his Amended Complaint that he was the President and CEO of CONSOL, dismissal is warranted without the need to go beyond the four corners of his pleading.

---

[14] *See also Biro*, 883 F. Supp. 2d 441 (granting Rule 12(b)(6) dismissal of defamation claim where statements conceded to be substantially true based on the allegation of the complaint); *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 369 (S.D.N.Y. 1998) (same where statements in newspaper that plaintiff was the "main" or "prime" suspect in a bombing were held to be substantially true in light of plaintiff's admission that he was "a" suspect); *Chung v. Better Health Plan*, No. 96 CIV. 7310(JGK), 1997 WL 379706 (S.D.N.Y. July 9, 1997) (same where statements that plaintiff "had a sexual harassment lawsuit pending" and that "she had been terminated" were substantially true and therefore nonactionable in light of the allegations in her complaint that she was "constructively discharged" and had "only filed an administrative charge of sexual harassment with the EEOC at the time"); *Contemporary Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612 (2d Cir. 1988); *Abdellatif v. Alza Wrae Indus. Co.*, No. 18-cv-2297, 2019 WL 1284689, at *10 (E.D. Penn. Mar. 20, 2019) (dismissing defamation claim on Rule 12(b)(6) motion where statement that plaintiff was under federal investigation was held to be substantially true from the face of the complaint).

18

### 2.    Plaintiff's temporal distinction does not save his claim.

Plaintiff's entire case hangs on the erroneous theory that identifying him as an executive at CONSOL is actionable because — taken literally — it was no longer accurate in April 2019, when the Article was published. But this temporal distinction has no bearing on substantial truth where, as here, the "gist" or "sting" is that Plaintiff should be held accountable for CONSOL's carbon emissions during his tenure. Indeed, the Article is *retrospective*: the text sates that it is identifying the CEOs of the "100 companies [] responsible for more than 70% of the world's greenhouse gas emissions *since 1988*." Am. Compl. Ex. A (emphasis added).

Several courts have explicitly rejected the kind of temporal distinction Plaintiff makes here to avoid dismissal on substantial truth grounds. For example, in *Guccione*, plaintiff alleged that he was defamed by an article stating he "is married and also has a live-in girlfriend." 800 F.2d at 299. Though the plaintiff admittedly spent thirteen years living with his girlfriend while simultaneously being married to another woman, he contended that the statement was false because he had been divorced for four years when the challenged statement was published. *Id.* The Second Circuit disagreed, holding that the challenged statement could not "fairly be read to mean that the marriage and the cohabitation existed simultaneously *only* at a moment or brief interval just prior to the article's publication." *Id.* at 302. To demonstrate this, the Second Circuit tested a reformulated, more accurate version of the statement in order to show that it would not have had a different effect on the reader. *Id.* ("The only difference in effect between the two statements worked in Guccione's favor; as printed, the statement merely points out the fact of his adultery, without calling attention to its duration for thirteen of the preceding seventeen years.").

As in *Guccione*, a reasonable reader would understand that the deleterious impact of carbon emissions do not exist "*only* at a moment or brief interval just prior to the article's publication." *Id.* Indeed, applying the *Guccione* test of reformulating the statement here yields a similar result to the one reached by the Second Circuit. For example, a literally accurate statement about Plaintiff in the context of the Article might have indicated that he was a senior executive at CONSOL for at least 23 of the 27 years covered by the data, was named CONSOL's President in 2011, its CEO in 2014, and was Director and Chairman of the Board of the general partner of CONSOL Coal Resources LP. Am. Compl. ¶ 22; Balin Decl. Ex. A. Adding that CONSOL subsequently split into two companies and that since November 2017 Plaintiff has served as President and CEO of CNX does not change the "gist" or "sting" of the charge that he bears responsibility for CONSOL's carbon emissions between 1988 and 2015.[15] Like the reformulated, more accurate version of the statement tested in *Guccione*, this more accurate statement about Plaintiff would have left no more of a negative effect on the reader; in fact, as in *Guccione*, the more accurate statement would have called attention to the fact that Plaintiff held senior positions at CONSOL for almost the entire period covered by the emissions data highlighted in the Article.

---

[15] Plaintiff tries to plead around his substantial truth problem by emphasizing that CNX is a gas company and that the Article "falsely and incorrectly identified [him] as the head of a coal company." Am. Compl. ¶ 3. *See also id.* ¶ 4 (alleging that the Article identified Plaintiff "as the CEO of the coal company that Defendants wished to target as a polluter"). This is flatly contradicted by the Article itself (attached as an exhibit to the Amended Complaint), which does *not* state that CONSOL is a coal company; in fact the Article explicitly calls out companies exploiting "oil, gas, and coal," and includes many gas companies on its list. Moreover, Plaintiff admits in his Amended Complaint that during his tenure, CONSOL "owned and operated both natural gas assets and coal assets." Am. Compl. ¶ 25. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

*Chung v. Better Health Plan* is also instructive.  In that case, the plaintiff alleged that her former employer defamed her by wrongfully disclosing to her subsequent employer that the plaintiff had a sexual harassment claim pending against her former employer.  1997 WL 379706, at *1.  Even though the plaintiff did eventually commence a sexual harassment claim against her former employer, she argued that *at the time the statement was made*, she had only filed an administrative charge of discrimination with the EEOC.  *Id*. at *3.  The court rejected this temporal distinction and dismissed the claim on the basis of substantial truth:  "Although Chung attempts to distinguish the defendant's alleged statements in such a way as to allege them false, the gist of the disputed statements is substantially the same as the plaintiff's version of the true facts.  The defendant's alleged statements are, therefore, substantially true."  *Id.*

Similarly, in *Hughes v. Hughes*, 19 Cal. Rptr. 3d 247, 253–541 (Cal. Ct. App. 2004), the plaintiff sued his sons for stating to a writer from *Vanity Fair* that, "Our dad's a pimp," and a jury found the statement to be true based upon evidence that the plaintiff had been a pimp when he was younger.  *Id.* at 251.  On appeal, the plaintiff argued that any evidence of his pimping activity was in the past and that it was therefore false to state that he "is" a pimp in the present tense.  *Id.*  The court held that it was reasonable to conclude "that the 'gist or sting' of the remark does not necessarily depend on *when* the plaintiff was a pimp."  *Id.* at 252 (emphasis added).  "For example, if one had engaged in criminal acts in the past, that might support the assertion that the person is a criminal."  *Id.*

The same is true here, except that unlike in *Hughes*, no fact finding is necessary; Plaintiff alleges in his own complaint that he was the CEO of CONSOL.  As in *Hughes*, the gist or sting of Plaintiff leading a company that was among the top-100 carbon polluters, is, as a matter of law, substantially true, and cannot give rise to a claim for defamation.

21

**D.      Plaintiff Fails to Plead a Claim for Defamation by Implication**

To the extent that Plaintiff asserts a claim for defamation by implication that too fails as a matter of law.  A heightened standard applies where a plaintiff alleges a false implication based on substantially true facts:

> To survive a motion to dismiss a claim for defamation by implication where the factual statements at issue are substantially true, the plaintiff must make a ***rigorous showing*** that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference.

*Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37–38 (1st Dep't 2014) (emphasis added).[16]

Courts also "express skepticism of a claim for defamation based on the omission of facts that may have cast the plaintiff in a different, more positive light, but would not otherwise render the expressed statements untrue."  *Biro*, 883 F. Supp. 2d at 465.  Further, "[t]he alleged innuendo 'may not enlarge upon the meaning of the words so as to convey a meaning that is not expressed.'"  *Id.* at 466 (quoting *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 136 (1959)).

The only implication alleged by Plaintiff in the Amended Complaint is "the implication that any company [Plaintiff] leads must be environmental unfriendly and/or a coal industry participant."  *Id.* ¶¶ 110, 133, 149, 166.  This allegation cannot sustain a claim for defamatory implication because Plaintiff does not allege (much less make the required rigorous showing)

---

[16] The law of Pennsylvania is in accord.  "A communication will not be regarded as defamatory by innuendo unless the 'innuendo [is] warranted, justified and supported by the publication," *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F.App'x 80, 105 (3d Cir. 2016) (citation and internal quotation marks omitted).  Allegations of "strained innuendo" are insufficient to withstand dismissal.  *Id.*  Accordingly, Pennsylvania courts routinely dismiss claims for defamation by implication at the pleading stage. *See, e.g.*, *Marin v. Erie Times*, 525 F. App'x 74, 77 (3d Cir. 2013) (dismissing defamation by implication claim under Pennsylvania law where alleged implication "stretches the statement too thin"); *Pace v. Baker-White*, 432 F. Supp. 3d 495 (E.D. Pa. 2020), *appeal filed*, No. 20-1308 (3d Cir. Feb. 13, 2020) and No. 20-1401 (3d Cir. Feb. 28, 2020); *Michalow v. Pasquerilla*, No. 2:16-CV-00464-CRE, 2016 WL 7404560 (W.D. Penn. Dec. 22, 2016); *ToDay's Housing v. Times Shamrock Commc'ns, Inc.*, 21 A.3d 1209 (Penn. Super. Ct. 2011).

that it was adopted by Engel.  Simply reframing his claim as one for defamation by implication

does not overcome the First Amendment prohibition against imposing liability for expressions of

opinion on matters of public concern.  *See, e.g.*, *Biro*, 883 F. Supp. 2d at 465; *Fanelle v. Lojack*

*Corp.*, No. CIV.A. 99-4292, 2000 WL 1801270, at \*3 (E.D. Pa. Dec. 7, 2000) (opinion is

protected against claims for defamation by implication); *Livingston v. Murray*, 612 A.2d 443

(Pa. Super. Ct. 1992) (holding that opinion based on disclosed facts did not give rise to

defamation by innuendo).  Plaintiff's defamation claims fail and must be dismissed as a matter of

law.

## II.   PLAINTIFF'S DUPLICATIVE FALSE LIGHT CLAIM ALSO FAILS AS A MATTER OF LAW

Plaintiff's attempt to recast his defective defamation claim as one for "false light" also

fails.  *See Chao v. Mount Sinai Hosp.*, No. 10 CV 2869(HB), 2010 WL 5222118, at \*11

(S.D.N.Y. Dec. 17, 2010) (where "tort claims essentially restate a defamation claim that has been

dismissed on a motion to dismiss, the tort claims must also be dismissed"), *aff'd*, 476 F. App'x

892 (2d Cir. 2012); *Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693–94 (S.D.N.Y.

1995) ("When additional tort claims are aimed at controlling the same speech that is the basis of

a libel claim, courts should not entertain the additional claims under less stringent standards.").

But even if Plaintiff's false light claim were not impermissibly duplicative of his

defamation claims (and it is), it would still fail.  Under New York's choice of law rules, "the law

of the jurisdiction where the tort occurred will generally apply" to a false light claim.  *Berwick v.*

*New World Network Int'l, Ltd.*, No. 06 Civ. 2641(JGK), 2007 WL 949767, at \*7–8 (S.D.N.Y.

Mar. 28, 2007) (finding that New York law applied to a false light claim asserted by a

Pennsylvania plaintiff because the alleged conduct occurred in New York, even though the

23

challenged statements were published on the Internet and were thus accessible in Pennsylvania).

Here, Plaintiff alleges that the conduct at issue took place in New York. *See* Am. Compl.

¶¶ 11, 13.  Therefore, New York law applies to his false light claim.  Since it is well established

that "New York does not recognize as a tort 'false light' invasion of privacy," the claim must be

dismissed. *Berwick*, 2007 WL 949767, at *6.[17]

In the alternative, if the Court decides that Plaintiff's false light claim is governed by

Pennsylvania law, his claim still fails because the Amended Complaint fails to plead actual

malice.  *See Graboff*, 744 F.3d at 136 ("Pennsylvania has adopted the definition of false light

invasion of privacy from the Restatement (Second) of Torts, which imposes liability on a person

who publishes material that is not true, is highly offensive to a reasonable person, and is

publicized with knowledge or in reckless disregard of its falsity.") (citations and internal

quotation marks omitted).  *See also Time, Inc. v. Hill*, 385 U.S. 374, 387 (1967) (holding that

plaintiff alleging the tort of false light must show actual malice).

At most, Plaintiff alleges that, because his company is publicly traded, Engel could have

done more research to identify the correct CEO of CONSOL in April 2019.  Am. Compl. 6.  But

"failure to investigate, without more, cannot establish reckless disregard for the truth."  *Gertz*,

418 U.S. at 332.[18]  Beyond that, the Amended Complaint contains nothing more than conclusory

statements that parrot the legal standard for actual malice, without asserting *any* facts that could

---

[17] *See also Pedraglio Loli v. Citibank Inc.*, 173 F.3d 845, 845 (2d Cir. 1999) ("[D]istrict court properly dismissed [plaintiff's] 'false light' invasion of privacy claim as not cognizable under New York law."); *Baiqiao Tang v. Wengui Guo*, No. 17 Civ. 9031 (JFK), 2019 WL 6169940, at *6 (S.D.N.Y. Nov. 20, 2019) ("Allegations that a defendant portrayed a plaintiff in a false light, however, are not actionable under New York law.").

[18] *See also Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 408 (2d Cir. 2000) ("It is well settled that a defendant's failure to investigate before making defamatory statements does not support a finding of actual malice.") (citing *Harte-Hanks Commc'ns*, 491 U.S. at 666–67).

plausibly give rise to an inference of actual malice.  That is simply insufficient to allege actual

malice.  *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements . . . supported by mere

conclusory statements, do not suffice").[19]

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety,

with prejudice.


Dated:  New York, NY
              October 19, 2020

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLC


By:   /s/ Robert D. Balin
        Robert D. Balin
        Adam I. Rich
        DAVIS WRIGHT TREMAINE LLP
        1251 Avenue of the Americas, 21st Floor
        New York, NY 10020
        Telephone: (212) 489-8230
        Email:  robertbalin@dwt.com
                        adamrich@dwt.com

*Attorneys for Attorneys for Defendant*
*Jordan Engel, individually and d/b/a The*
*Decolonial Atlas*

---

[19] *See also*, *Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015) ("[M]alice must be alleged plausibly in accordance with Rule 8."); *Egiazaryan*, 2011 WL 6097136, at *8 n.3 ("Although malice is a 'condition of mind' that may be 'alleged generally,' under Rule 9(b), the pleading requirements of *Iqbal* apply with equal force.") (citing *Iqbal*, 556 U.S. at 686–87); *Pace*, 432 F. Supp. 3d at 513-14 ("In the wake of *Iqbal* and *Twombly*, 'adequately pleading actual malice is an onerous task' . . . [a]nd it is one that regularly results in early dismissal of an action.").